In re REALTY ASSOCIATES SECURITIES CORPORATION.

No. 45024.

District Court, E. D. New York.

May 1, 1945.

See, also, D.C., 56 F.Supp. 1008.

Lewis, Marks & Kanter, of Brooklyn, N. Y., and Julius Silver, of New York City (Lloyd B. Kanter, of Brooklyn, N. Y., and Jack L. Rappaport, of New York City, of counsel), for Bondholders' Protective Committee.

Percival E. Jackson, of New York City (Theodore N. Tarlau, of New York City, of counsel), for John Vanneck, Barbara B. Vanneck, Equitable Holding Corporation, and Frank Bailey.

George Zolotar, of New York City (Kiva Berke, of New York City, of counsel), for Securities and Exchange Commission.

Herrick & Feinstein, of Brooklyn, N.Y., Abraham Feinstein, of Brooklyn, N. Y., of counsel), for bondholders.

Irving L. Schanzer, of New York City, for Prudence Realization Corporation.

Hooker, Alley & Duncan, of New York City (James B. Alley, of New York City, of counsel), for debtor.

Lynn G. Goodnough, of Brooklyn, N. Y., for Realty Associates, Inc.

Halpin & Keogh, of New York City (Eugene J. Keogh, and Edward S. St. John, both of New York City, of counsel), for Trustees.

Charles J. Buchner, of Brooklyn, N. Y., for bondholders.

MOSCOWITZ, District Judge.

A motion was heretofore made herein by certain bondholders (creditors) of the debtor to disqualify the Bondholders' Protective Committee consisting of Messrs. Edwin B. Meredith, Chairman, a business man and financial executive, Jacob R. Schiff, an attorney-at-law, and Milton C. Zaidenberg, associated with an investment and security firm. In connection with such application specifications of charges were

filed. These charges were referred to Hon. Edward R. Finch, as Special Master, to report thereon with his opinion.

On March 26, 1945, the Special Master filed an opinion in which he recommended that the application to disqualify the Bondholders' Protective Committee or any members thereof should be denied. On March 29, 1945, the Special Master filed a supplemental report in which he recommended that the cost of the proceeding should be borne by the debtor. A motion has been made to confirm the report of the Special Master recommending that the motion to disqualify the committee be denied.

In view of the fact that the subject matter in the Special Master's opinion is of such vital importance to the members of the bar, the pertinent portions thereof will be set forth in this opinion, as follows:

"Among the grounds urged for disqualification is that:

" 'The Bondholders' Protective Committee and its members fall far below the rigid uncompromising standards required of fiduciary and should be disqualified from serving as a committee from this proceeding.'

"There is no dispute over the well-settled principle that:

" 'A bondholders (creditors) committee is a fiduciary for all bondholders and as such owes undivided loyalty and allegiance to the bondholders and to them alone.' Moscowitz, J., In re Realty Security Associates, 56 F.Supp. 1008.

"The dispute in the case at bar is whether the facts shown are sufficient to disqualify the Committee or any member of the Committee.

"The Bondholders' Protective Committee was formed July 30, 1943, at the instance of an attorney who is a member of the Committee but not its Chairman and who has been a bondholder since 1933. (Respondent's Exhibit B-11.) It is urged by petitioner that this Bondholder's Committee amounts to a strictly one-man Committee organized, financed and dominated by the lawyer member at whose instance it was formed to make fees for the Committee Members and defeat reorganization of the Debtor.

"It is further urged that this member of the Committee selected his nephew by marriage as counsel to the Committee, and an employee of a company controlled by him as Chairman. In addition, that this same member financed the operations of the Committee by advancing funds in an amount of $3,800.00 which was wholly out of proportion to his investment in the bonds of the Debtor. These funds were to pay for advertising, circularization and the services of an agent for nine weeks at Fifty Dollars ($50.00) a week, and to explain to the bondholders the criticism of the bondholders' Protective Committee to the Debtor's voluntary plan, and to obtain authorization from the bondholders to join with the Bondholders' Protective Committee.

"Even assuming the above facts, they are insufficient to show a conflict of interest or divided loyalty. They are also insufficient to show disqualification of the Committee or any of its members.

"The fact that the Chairman of the Committee has business loyalties or obligations to a corporation in which the dominating member of the Committee is a controlling stockholder, or even that the Chairman has business loyalties to a member of the Committee does not create as such an interest conflicting with or divided loyalty to the interest of bondholders within the purview of the authorities. Such a conflict of interest or division of loyalty could only arise if the Chairman of the Committee while acting for the bondholders, had established an interest or an obligation opposed to those of the bondholders so that he could not act impartially as between such interest and the bondholders.

"Every person has loyalties and obligations to others but objectionable interests and obligations must be within an orbit where the interest conflicts with and is opposed to those of the bondholders. For example, ties to the Debtor or any of its affiliates would be within the prohibited orbit. It was because the Bondholders Directors Committee had such ties to the Debtor that it was disqualified on application made by the Bondholders' Protective Committee, in Re Realty Associates Securities Corporation, D. C., 56 F.Supp. 1008. A similar situation was considered in Woods v. City Nat. Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820.

"The fact that the member of the Committee at whose instance it was formed has advanced monies for the necessary and effective functioning of the Committee provides no grounds for removal. An attorney may advance money

necessary for the conduct of the proceeding upon the credit of the cause to be repaid. (Thornton 'Attorneys at Law,' Vol. 2, p. 671, Sec. 389. Wood on 'Fee Contracts of Lawyers,' p. 38.) The Bankruptcy Act, 11 U.S.C.A. Sec. 102, contemplates such expenditures and makes provisions for reimbursement from the Debtor's estate where the court finds such expenditures necessary and for the benefit of the bondholders. In the case at bar, the dominating member of the Committee is not acting as counsel to the Committee. As noted however, it is not necessary to press the objection on that ground.

■ "It is next urged that the employment of an agent to visit bondholders, explain the objections of the Bondholders' Protective Committee to the plan and to obtain authorizations are grounds for disqualification. The record shows that this agent was selected by the Chairman of the Committee and employed by the Committee as a whole. The Committee had the right to explain their criticism of the plan proposed by the Debtor and to solicit authorizations for the purpose of bringing about concerted action either through the mails or through agents. The Committee asserts that it had to employ such agents and seek authorizations particularly in view of the fact that the Committee had difficulty in obtaining a list of the bondholders from the Debtor. But this allegation is in dispute. In any event, the facts show no ground for disqualification of the Committee or its Members. Whether the Committee have the right to look to payment for their efforts in this proceeding within the limitations of the Bankruptcy Law is not now before us.

"It is next urged that the purchase of bonds by the Committee member at whose instance the Committee was formed and the fact that the other two members of the Committee owned no bonds, furnishes grounds for disqualification.

■ "The facts as to the purchase of bonds shows that the member at whose instance the Committee was formed made an initial purchase of two bonds in 1933 during a prior proceeding of this same Debtor, which prior proceeding however was terminated by means of a composition confirmed by order of this Court on April 5, 1934. Since this order terminated that proceeding and effected a discharge in bankruptcy, the purchase of these bonds is not objectionable in this proceeding. (Gilbert's 'Collier on Bankruptcy,' 1937, Sec. 1580, 1331.) Thus from June 6, 1934 to September 28, 1943, the Debtor was free from judicial control. The present proceeding is new and in no sense a continuation of the 1933 proceeding. The second and last acquisition of bonds by this member of the Committee occurred in April, 1943. Such purchase was prior to the commencement of the present proceeding on September 28, 1943 by the filing of the Debtor's petition for its reorganization. Even considering that on July 30, 1943, the Bondholders' Protective Committee was formed and that the statutory provisions regarding the purchase of securities of the Debtor would apply from that date, still the purchase of these bonds in April would not be made 'after the commencement of such proceeding.' (Chapter 10 of the Bankruptcy Act as amended 11 U.S.C.A. Section 649).

■ "It is next urged that the employment by the Committee of the agent for the purpose of having him procure from bondholders authorizations giving the Committee and the nephew of the dominating member of the Committee as counsel to the Committee, the right to pursue the civil remedies for these bondholders, violates Subdivision 2 of Section 274 of the Penal Law of the State [Consol.Laws N.Y. c. 40] The authorities however, are unanimous in holding that these acts constitute no violation of that law. Moses v. McDivitt, 88 N.Y. 62; See 139 A.L.R. 636, 650.

■ "It is next urged that the fact that the dominating member of the Committee filed an affidavit and certificate of prejudice against a Judge in the 1933 proceeding and subsequently withdrew such affidavit and certificate based upon an affidavit by him that the filing was ill-advised and unjustified, whereupon the proceedings were dismissed, should bar him from serving as a fiduciary for bondholders. Since these proceedings were dismissed, they furnish no ground for disqualification as a member of this Committee.

■ "It is next urged that the fact that the other members of the Committee own no bonds and may not have had previous experience as a member of such a Committee or had any previous experience in real estate matters should disqualify such members. There is nothing in the statute, or elsewhere, which would disqualify

Committee Members under such circumstances.

"It follows that the application to disqualify the Bondholders' Protective Committee, or any of the Members thereof, should be denied."

The Special Master in a carefully prepared decision has adequately decided the issues before him. His opinion and supplemental report will be accepted and is herewith confirmed.

Title 11, United States Code Annotated, Section 609, does not require that an individual need be a security holder of the debtor in order to qualify as a member of a committee. In this case Mr. Schiff is a small bondholder; the two other members of the Committee hold no bonds. Mr. Schiff owns five bonds of the debtor—two totaling $1750 in amount, which he acquired in December, 1933, for approximately $500 and three totaling $2625 in amount, which he acquired on April 13, 1943 for $2310. The Special Master found that Mr. Schiff financed the operations of the Committee by advancing funds in the amount of $3800 which were to pay for advertising, circularization and the services of an agent for nine weeks at fifty dollars a week to explain to the bondholders the criticism of the Bondholders' Protective Committee to the debtor's voluntary plan and to obtain authorizations from the bondholders to have the Bondholders' Protective Committee represent them.

 The fact that Mr. Schiff, an attorney-at-law, advanced the funds to the Committee does not make it a violation of Chapter X, 11 U.S.C.A. § 501 et seq. If this be regarded as objectionable, the remedy is not with the court but is with the Congress. There can be no question that a committee acts as a fiduciary for all bondholders and that as such its primary loyalty must be to the bondholders. Chief Judge Cardozo in discussing the obligations of a trustee stated in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A. L.R. 1:

"A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303."

Also see City Bank Farmers Trust Co. v. Cannon, 291 N.Y. 125, 51 N.E.2d 674; Matter of Ryan's Will, 291 N.Y. 376, 52 N.E.2d 909; Ten Eyck v. Craig, 62 N.Y. 406; Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151; Dudley v. Mealey, 2 Cir., 1945, 147 F.2d 268, 272.

 The individuals constituting a committee for bondholders should be honest, loyal, trustworthy, without conflicting interests and persons whose undivided loyalty and allegiance is to the bondholders. The fact that committees do not act in the sense of public duty alone, that they expect to be compensated for their services is not sufficient to disqualify them. Chapter X provides that the compensation of such committees shall be fixed by the court and that they may only receive compensation if they render beneficial services.

Mr. George Zolotar, attorney for Securities and Exchange Commission, and Mr. Kiva Berke, of counsel, properly point out these principles.[1]

The question is not here presented whether the sum of $3800 advanced by Mr. Schiff was for expenses properly incurred

---

[1] "It is also clear that committeemen do not act from a sense of public duty alone. See Weiner, Reorganization under Section 77 (1933) 33 Col.Law Rev. 834, 842. They expect to be compensated for their services and they generally hope that their positions will be as lucrative as conditions permit. In recognition of this, Chapter X contains elaborate provisions relating to allowances to parties in interest and their representatives. Secs. 241–250, 11 U.S.C.A. §§ 641–650. In fact, Chapter X has enlarged the class of claimants who may receive compensation for the rendition of beneficial services. 'Because some decisions under 77B treated with extreme suspicion, or rejected entirely, the claims for compensation of individual creditors or stockholders when the class to which they belonged was represented by a committee, section 243 was enacted to encourage participation by individuals who might contribute something of value to the plan or to the administration of the estate.' In re Porto Rican American Tobacco Co., 2 Cir., 1941, 117 F.2d 599, 601. In testifying in this regard before the House Judiciary Committee, Commissioner (now Justice) Douglas declared:

" ' * * * Minorities in current reorganizations who have been fighting plans

and whether they may properly be reimbursed. That question should be reserved and will be passed upon if and when such reimbursement is requested.

There can be no question as to the desirability of protective committees in a Chapter X proceeding. The organization of proper committees should be encouraged. The following decisions are apt: In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 1939, 105 F.2d 358 and In re Rosenbaum Grain Corporation, D.C.Ill.1935, 13 F.Supp. 601.

This Court had occasion to consider the basis for disqualifying a committee in this proceeding, known as the Bondholders' Directors Committee—56 F.Supp. 1008. There, there was a conflict of loyalties. No disloyalty on the part of this committee to the bondholders has been shown.

Motion to disqualify the Bondholders' Protective Committee is denied. The Special Master will be allowed the amount he requested for his services, which is modest indeed.

Settle order on notice.

---

proposed by the inside few, have been denied compensation although their efforts were beneficial to the estate in the sense of eliminating from the plans unfair and inequitable provisions. Now, constructive work of this character should not be ignored in our judgment. Compensation and expenses should not be reserved for the inside few, who in spite of a show of prodigious effort, are too frequently serving objectives which are not compatible with the interests of investors. To allow the standard of compensation to remain as it is, is to put a premium upon domination of the proceedings by the management and the investment bankers. If the shift in power is to be to the security holders and their authorized representatives, the standard for allowances should be changed along the lines suggested in the Chandler bill.' (Hearings before House Judiciary Committee on H.R. 6439 (amended and reported as H.R. 8046), 75th Cong. 1st Sess. (1937) 186).

"There has been legislative recognition, therefore, that the motive of pecuniary reward does not play an inconsequential role in inspiring the independent and vigilant representation to which security holders are entitled. At the same time, there is little question that the Congress was also concerned with the extravagances which previously had prevailed in reorganization matters. This aspect of the problem both Section 77B [11 U.S.C.A. § 207] and Chapter X have sought to solve by prohibiting the former practice of permitting committees to fix their own compensation. Instead, complete supervision over allowances has been placed in the courts under the general direction to restrict allowances to reasonable amounts for necessary and beneficial services only. Duplicative, superfluous services are not compensable. In this connection, it may be noted that while Chapter X has broadened the allowance base, the opportunities for compensation to committees are narrower because of the increased duties which have been assigned to the disinterested trustees and their counsel with regard to the promulgation of plans and the investigation of the debtor's affairs. Except in unusual instances, committee allowances under Chapter X have been rather modest.

"With respect to committee disbursements, comparable considerations apply. The statute recognizes that committees and their counsel frequently are required to make expenditures in connection with the exercise of legitimate committee functions. If such expenses have been properly and necessarily incurred, the judge is authorized to allow reimbursement (Sec. 242, 11 U.S.C.A. § 642). In the period when universal use was made of deposit agreements, it was a frequent practice for committees to borrow funds from outsiders by pledging the bonds or other securities deposited with the committee. Without supervision by the court as to the nature of the expenses, committees were thus empowered to impose prior liens upon the securities. The general abandonment of the deposit agreement as a mode of committee authorization has necessarily invited the more wholesome practice of having one or more of the committee members advance the required funds and assume the risk of reimbursement."