McGEOCH BUILDING COMPANY, Respondent, vs. DICK & REUTEMAN COMPANY and others, Appellants.*

*May 28—July 1, 1948.*

* Motion for rehearing denied, without costs, on September 14, 1948.

168

For the appellants there were briefs by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Mr. Malcolm K. Whyte* and *Mr. Harding.*

For the respondent there were briefs by *B. F. Saltzstein, Aaron D. Levine,* and *Gold & McCann,* and oral argument by *Mr. Levine* and *Mr. Arthur Saltzstein,* all of Milwaukee.

FAIRCHILD, J.  The appellant, Dick & Reuteman Company, agreed to underwrite the bonds which respondent was to use as security for money borrowed.  Dick & Reuteman Company, also named trustee under the trust-mortgage indenture, was successful in raising the money required by sale of bonds to its clients and friends.  It transpired that seven years after the money was borrowed the mortgagor was unable to meet principal, interest, and tax payments then due.  These defaults were the cause of efforts put forth by Dick & Reuteman Company as trustee to improve conditions for the benefit of the bondholders.  Under the arrangements made in the management agreements of July, 1933, and March, 1940, it came about that no foreclosure of the mortgage or liquidation proceedings to overcome the defaults occurred, and payment of the overdue sums was made.

While this result was being worked out, the appellant Dick & Reuteman Company became the owner of ten of the mortgage bonds of varying amounts, and the appellant H. L. Kadish became the owner of eleven.  The respondent insists that their purchase of these bonds at a discount was a breach of trust and that the advantage in price resulting to appellants when respondent called the bonds at par belongs to the respondent.  The trial court so concluded and gave judgment accordingly.  The evidence does not warrant that conclusion, and the findings of fact quoted above are against the great weight and clear preponderance of the evidence.

The trial court found that it was without the knowledge or authorization of the respondent that appellants acquired the bonds.  The testimony of Gustav Kahn, then the president of the respondent company, and of Charles Kahn, vice-president, as well as the testimony of two brokers shows that when bondholders desiring to sell their bonds, came to the respondent company, they were told to go to Dick & Reuteman Company and see Mr. Kadish.  They were told that appellants could take the bonds off their hands.  Gustav Kahn testified,

"My purpose in referring people to Dick & Reuteman Company was because I felt if the bonds were in the hands of

Dick & Reuteman Company they were in better hands than getting in the hands of someone who might upset things. I knew Dick & Reuteman Company were trying to save the building, and they did."

None of this testimony was contradicted. In *Schroeder v. Arcade Theater Co.* (1921) 175 Wis. 79, 106, 184 N. W. 542, it was recognized that in the execution of a trustee's obligations and powers under a trust deed, "it is incumbent upon him to use the utmost good faith toward all parties in interest. He must act impartially for every person who has any rights in the estate." The record shows that the appellants met that test here. They cannot be criticized for using reasonable efforts to maintain a favorable market for the bonds. There is no showing that unfair methods were resorted to in acquiring the bonds. The respondent was not attempting to acquire or pay up the bonds. In the face of respondent's conduct in referring bondholders to appellants it cannot be said that appellants' acquisition of the bonds was without the knowledge or consent of the respondent.

Respondent relies on the general principle that a trustee or agent is under a duty not to profit by dealing for his own benefit in the business of the trust or agency. *Magruder v. Drury* (1914), 235 U. S. 106, 35 Sup. Ct. 77, 59 L. Ed. 151; Restatement, 1 Trusts, p. 431, sec. 170; Restatement, 2 Agency, p. 873, sec. 389; 1 Mechem, Agency (2d ed.), p. 894, sec. 1224; p. 895, sec. 1225; 49 Harvard Law Review, 521. It was evidently on the basis of this principle that the trial court found that appellants' receiving par value for the bonds previously acquired at a discount was wrongful. These statements of the duties of a fiduciary were made in connection with the ordinary agency or trust relationship. The relationship of the parties under a trust indenture is different from that of the ordinary fiduciary relationship. In the words of this court in *Schroeder v. Arcade Theater Co., supra*, p. 103, "The trustee, under the provisions of the trust deed, in some respects represents the bondholders, in other respects the mortgagor, and in still other respects both bond-

holders and mortgagor." The trust indenture is a form of mortgage security and is unlike the usual trust. There is language in the texts to the effect that even though he represents different types of interests, the trustee in a deed of trust for security is subject to the same rules that govern all trustees. 2 Perry, Trusts and Trustees (7th ed.), p. 1032, sec. 602 *m;* 2 Bogert, Trusts and Trustees, p. 789, sec. 246. But the material which follows such language makes it clear that the rule does not necessarily prevent a trustee for bondholders from buying mortgage bonds. If the trustee under a trust indenture were given the power to sell the property securing the mortgage, the general rule applicable to all fiduciaries would operate to prevent the trustee from either purchasing the property on his own behalf or failing to account to the mortgagor for the proceeds. But that is not the situation here. It would also be a wrong on the part of a trustee, under circumstances like those existing in this case, to confederate with the mortgagor to reduce the value of the bonds or to depress their market value. The circumstances of this case and the resulting duties of the trustee are described in 2 Perry, Trusts and Trustees (7th ed.), p. 1293, sec. 749:

"The corporation itself issues the bonds, and promises to pay the principal and interest at a time named. So long as the corporation pays the interest or the principal of the bonds, as agreed, the trustees have little or nothing to do. The general principles of the law of trusts apply to them. They hold the security in trust for the bondholders, as *cestuis que trust;* and they must act in good faith, and for the best interests of all. They must take care that the property is not wasted, or depreciated, or rendered worthless as security. They should not acquire interests, or put themselves in positions or relations which are antagonistic or hostile to the interests of the bondholders. Doubtless they can purchase the bonds for which the mortgage stands as security in the open market: but they could not go among the bondholders and solicit the purchase of the bonds; for, holding the security for the bonds in their own hands, their position and influence would be

such, and the danger of fraud so great, that a court of equity would not allow the bargain to stand."

In the case of a trust indenture, as in other trust cases, it is of course true that the instrument creating the trust or the fiduciary relationship is to be looked to for stipulations fixing the obligations of the parties. This is necessarily so as the nature of the trust assumed depends upon the relations of the parties. As circumstances change from time to time the obligations of the trustee also may change. In this case the suggestion is made that the management agreements of July, 1933, and March, 1940, made appellants something more than trustees by making them agents of the respondent for compensation. The management agreements did increase appellants' fiduciary duties regarding the management of the mortgaged property, but those agreements did not affect appellants' right to purchase bonds unless it can be said that because a provision which would specifically permit appellants to deal in the bonds on their own accounts was purposely omitted from the agreements, appellants were guilty of fraud in buying the bonds they did. There is no showing, however, that respondent was harmed by appellants buying bonds on their own accounts. Keeping the bonds in friendly possession was favorable to the mortgagor. At any time the bondholders came to them the officers of the respondent company could have bought the bonds themselves if they had chosen to do so. The record shows that neither the Kahns nor B. F. Saltzstein desired to acquire the bonds for themselves. There is no showing that appellants were in any way competing with the respondent in buying the bonds at a discount.

Respondent argues that even if it was proper for appellants to acquire the bonds in order to maintain a market, it was not proper for them to profit thereby. It is respondent's contention, on the basis of the general principles of agency law already referred to, that appellants are entitled to receive from the mortgagor only the amount they paid for the bonds. In *Steven v. Hale-Haas Corp.* (1946) 249 Wis. 205, 23 N. W.

(2d) 620, 23 N. W. (2d) 768, that same argument was considered in connection with the fiduciary relationship between officers and directors of a corporation and the stockholders. There the court said at pp. 231, 232, of the opinion,—

". . . we come to the significance of the finding that Hale [a director] purchased preferred stock for an average of $75 and that by the consummation of the scheme the stock would be retired at the call price of $105, to the profit of Hale. Plaintiff contends that this was a wrong to the corporation. If so, it was because the corporation was thereby foreclosed of an opportunity to acquire the stock at less than the call price. . . . we do not consider that plaintiff has alleged, proved, or otherwise litigated the point that Hale-Haas was forestalled from purchasing this stock. This being true, whatever wrong there might have been would be to those from whom Hale purchased the stock, and if there was such a wrong, it would be because an insider bought the stock without disclosing inside information as to future corporate action affecting its value."

We recognize that when the trustee under a trust-mortgage indenture acquires some of the mortgage bonds he may have a greater opportunity than otherwise to confederate with other bondholders to force proceedings after default that might harm the interest of the mortgagor. If a bondholding trustee availed himself of such an opportunity, he would unquestionably be breaching his fiduciary duty to the mortgagor.

In the instant case the trustee bought the bonds with the knowledge of the mortgagor, did not solicit them from among bondholders and bought them under circumstances that benefited both the bondholders and the mortgagor. The bondholders were protected by the maintenance of a market for the bonds. The mortgagor was protected by having the bonds in friendly hands. No harm is shown to have resulted. The trustee has not been guilty of any breach of contract, and no reason exists in the broader field of equity for finding any breach of fiduciary duty necessitating appel-

lants giving to respondent the earnings made by appellants by buying the bonds they did.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in defendants' favor and dismissing the complaint.

MARTIN, J., took no part.

The following opinion was filed September 14, 1948:

PER CURIAM. *(on motion for rehearing).* The state of the record is such that the judgment ordered must stand. The misstatement concerning the existence of certain evidence, which was a basis of the motion for rehearing, is withdrawn. The writer of the opinion mistakenly referred to the following as evidence when this was but an offer of proof which had been excluded at the trial:

". . . our clerks who contacted our customers at the desks would tell people—the original bondholders—to hold their securities and not to sell them. The only bonds we were interested in were bonds offered by brokers, estates of people who were out to sell them. They were going to dispose of the bonds and we hoped to keep them off the market in order to prevent difficulties for the owners of the property and for the bondholders.

"No solicitation of any bondholder that he sell his McGeoch Building Company bond was ever made by Dick & Reuteman Company or myself. At our instruction, our clerks urged bondholders not to sell their bonds."

The burden of proof as to overreaching or forestalling the mortgagor was upon the plaintiff. Therefore when that offer is eliminated and its contents disregarded the result is not affected under the rules of law upon which the decision was based.

As the respondent did not meet its burden of showing a wrong to the mortgagor the motion for rehearing must be denied. Motion costs not allowed.