### In re FRANKLIN BLDG. CO.
No. 25907.

United States District Court
E. D. Wisconsin.

Dec. 23, 1948.

John W. Emmerling, of Milwaukee, Wis., trustee, in pro. per.

Roger S. Foster, of Washington, D.C., and Thomas B. Hart, G. Gale Roberson and Leo J. Powers, all of Chicago, Ill., for S.E.C.

Harvey C. Hartwig, of Milwaukee, Wis., for William A. Rosenberg, A. C. Schmidt, and Robert W. Schroeder.

Albert B. Houghton, of Milwaukee, Wis., for William A. Schroeder.

A. W. Richter, of Milwaukee, Wis., for Elizabeth Richter.

Louis C. Ritter, of Milwaukee, Wis., for Lena Simonsen.

Ralph M. Hoyt, of Milwaukee, Wis., for June Kuptz and Mollie Schroeder.

Norman J. Baker, of Milwaukee, Wis., as trustee of First Mortgage Trust Indenture, in pro. per.

DUFFY, District Judge.

On May 5, 1947, the debtor filed its petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and the petition was approved by this court on that date. John W. Emmerling was appointed and qualified as trustee. The following persons have filed claims to which the trustee has filed objections: Adelbert C. Schmidt, William A. Rosenberg, Lena Simonsen, Elizabeth Richter, William A. Schroeder, Mollie Schroeder, Robert W. Schroeder, and June Kuptz. A hearing was held and thereafter briefs were submitted by the trustee and upon behalf of all of said claimants. The Security and Exchange Commission and the trustee of the first mortgage trust indenture have filed briefs supporting the position of the trustee.

The Franklin Building Company was organized in 1929, and erected a five-story business building located at 709 Eleventh Street, Milwaukee. It executed a first mortgage to secure 6½% bonds in the sum of $250,000, and a second mortgage to secure

7½% bonds in the sum of $60,000. As interest payments on the mortgages were not made when due, a first mortgage bondholders' committee was formed in September, 1932. Adelbert C. Schmidt, William Rosenberg, and William Simonsen were three of the five members of the original bondholders' committee. The management and control of the building was placed in a trustee to be chosen by the bondholders' committee. Thereafter the committee selected as such trustee William A. Rosenberg, one of the claimants herein. One Marty was employed as manager of the building from 1932 until the summer of 1937 when William A. Schroeder was retained in such capacity.

On February 4, 1937, an involuntary petition for reorganization was filed under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. This petition was later dismissed. An involuntary petition under Chapter X was filed in 1943, but was dismissed in 1947, immediately prior to the time when the present proceedings were instituted.

Adelbert C. Schmidt was a member of the bondholders' committee from its organization in 1932 until the present time. He kept the only minutes of the operations of said committee. He bought $1,000 of the original bond issue, and in 1937 purchased $2,000 face value of bonds for $400 and bought a $500 bond at some other time but does not now know from whom or the price paid therefor.

William A. Rosenberg, who has been a member of the bondholders' committee from its formation until the present time, and who acted as trustee in charge of the operations of the building from September 1, 1932, to July 15, 1947, acquired $2,600 worth of bonds from 1938 to 1941 inclusive for $266.

William Simonsen was a member of the bondholders' committee from 1935 until his death on November 14, 1944. During the period from February 9, 1937, to May 1, 1942, he purchased $11,500 in bonds for $4,-367.50. The claimant, Lena Simonsen, is his widow and received these bonds by inheritance.

William A. Schroeder, a stockholder, director, and officer of the Franklin Building Company, and managing agent of the property from 1929 to 1932, and from 1937 to 1947, and a member of the bondholders' committee from November, 1944, to May 14, 1947, purchased $4,500 worth of bonds between September, 1946, and February 10, 1947, for $2,220.

Elizabeth Richter is the wife of Arthur W. Richter, who is the owner of one-third of the outstanding stock of the Franklin Building Company, and was also its secretary and one of its three directors. In 1935 he purchased a $500 bond for $100, and in 1944 a $1,000 bond for $100, and presented them to his wife. In 1945, he purchased $5,000 in bonds for $1,750, but in doing so used Mrs. Richter's own funds.

Mollie Schroeder, the wife of William A. Schroeder, during the period from January, 1941, to March, 1947, purchased $10,-000 worth of bonds for $3,780. Of this amount, $7,000 were purchased while her husband was a stockholder, director, officer, and member of the bondholders' committee, while $3,000 worth were purchased when he was not a member of the bondholders' committee.

Robert W. Schroeder is the son of William Schroeder, and was a member of the bondholders' committee from May 14, 1947, to date. In the period from June, 1942, to May 3, 1946, before becoming a member of the bondholders' committee, he purchased $8,300 worth of bonds for $3,494, and $2,100 worth of bonds for an unknown amount. No bonds were purchased by him after he became a member of the Bondholders' Protective Committee.

June Kuptz is the daughter of William A. Schroeder, and while her father was a member of the bondholders' committee purchased from May, 1946, to April, 1947, $4,-500 worth of bonds for $2,270.

It is the claim of the trustee that all of the claimants heretofore named were fiduciaries or were associated with a fiduciary in his dealings with trust property, and that their respective claims should be allowed only in the amount of the actual cost price of the bonds.

Section 212 of the Bankruptcy Act, Title 11 U.S.C.A. § 612, provides:

"The judge * * * may limit any claim or stock acquired by such person or committee in contemplation or in the course of the proceeding under this chapter to the actual consideration paid therefor."

The trustee argues that since a petition for reorganization was filed in this court under Section 77B on February 4, 1937 (dismissed February 27, 1937), and the committee thereafter discussed possible reorganization under Chapter X of the Bankruptcy Act, and an involuntary petition for reorganization had been filed prior to this proceeding, it follows that most of the bonds here in question were purchased "in contemplation of reorganization proceedings."

However, in support of the proposition that the members of the bondholders' committee and dominant directors and officers of debtor were fiduciaries who were not permitted to buy claims against an insolvent estate and make a profit therefrom, the trustee relies on such cases as In re Los Angeles Lumber Products Co., Ltd., D.C., 46 F.Supp. 77; In re Van Sweringen Co., 6 Cir., 119 F.2d 231; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; In re Norcor Manufacturing Co., 7 Cir., 109 F.2d 407.

The trustee also claims that the following terms of the trust agreement dated August 31, 1932, were violated:

"If and when the said Committee shall have money on hand after the payment of cost of operation of said building, and all taxes and ground rent, and such interest as they shall have decided to pay to the first and second mortgage bondholders, such money shall be used for the purchase and redemption of first mortgage bonds on the open market at the best price obtainable and if bonds cannot be obtained on the open market at less than par, then first mortgage bonds shall be redeemed by lot from all outstanding first mortgage bonds."

The claimants argue that at least until the very end of the period prior to the pending proceeding, the funds on hand were insufficient to purchase bonds on the open market. They also invite attention to the provision in the trust agreement which provides that neither the trustee nor the committee nor any member was to be responsible to anyone at any time for anything except on account of his act or own actual bad faith in the discharge of duties or expressed powers. Claimants point out that the bondholders' committee repeatedly urged bondholders to hold onto their bonds and that the only bonds which were purchased by committee members or members of their families were bonds in the hands of brokers which had formerly been owned by persons determined to sell in spite of urgings of the bondholders' committee to the contrary.

■ It is a well established general rule that the duty of a fiduciary is to act with undivided loyalty and solely for the benefit of the beneficiaries of the trust. The statement of Judge Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1, has often been quoted:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

■■ The members of the bondholders' committee were fiduciaries to all of the bondholders of Franklin Building Company. In re Realty Associates Securities Corp., D.C., 61 F.Supp. 574. Adelbert C. Schmidt (except for $1,000 of original issue), William A. Rosenberg, and William A. Schroeder purchased their bonds while they were members of the bondholders' committee; also the bonds now owned by Lena Simonsen were purchased by her husband while he was a committee member. I conclude that the claims based on bonds thus purchased must be limited to the amount of the purchase price.

I reach this conclusion in spite of the fact that the bondholders' committee frequently urged the other bondholders to retain their bonds, that they did not solicit the purchase of bonds and made such purchases from brokers, and that some of the committee members undoubtedly had in mind that the passage of such bonds into

unfriendly hands might result in a change in the program then being carried out by the committee. The basis for the seemingly harsh rule that a fiduciary must not be permitted to deal in trust property at a profit to himself is amply sound. As was stated in Magruder v. Drury, 235 U.S. 106, 119, 120, 35 S.Ct. 77, 82, 59 L.Ed. 151:

"It is a well-settled rule that a trustee can make no profit out of his trust. * * * The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity. * * *

"It makes no difference that the estate was not a loser in the transaction, or that the commission was no more than the services were reasonably worth. It is the relation of the trustee to the estate which prevents his dealing in such way as to make a personal profit for himself. * * *"

A fiduciary will not be permitted to assume a position which may afford a temptation to subordinate the interest of his principal to those of himself. To be free from any such temptation, he is disabled, even in good faith, from dealing with trust property at a profit to himself. Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833; Irving Trust Co. v. Deutsch, et al., 2 Cir., 73 F.2d 121; In re Los Angeles Lumber Products Co., supra; Booth v. Greer Inv. Co., et al., D.C., 52 F.2d 857.

In applying this strict rule, the members of the bondholders' committee are not losing anything, except perhaps the interest on the money they have invested. The application of the rule simply prevents them from making a profit.

Claimants who were members of the bondholders' committee lay much stress upon the case of McGeoch Building Co. v. Dick & Reuteman Co., 253 Wis. 166, 33 N.W.2d 252, 33 N.W.2d 864. The trust there being considered was under the terms of a trust indenture and the court emphasized a distinction from the situation in an ordinary trust. It stated with reference to the case of Magruder v. Drury, supra, and other authorities cited, 33 N.W.2d 252, at page 255:

"* * * These statements of the duties of a fiduciary were made in connection with the ordinary agency or trust relationship. The relationship of the parties under a trust indenture is different from that of the ordinary fiduciary relationship. * * * The trust indenture is a form of mortgage security and is unlike the usual trust. * * *"

However, the determining in a reorganization proceeding in what manner a claimant should be limited by his conduct is a matter of federal law. The case of Prudence Realization Corporation v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293, holds that federal law governs in determining the extent to which the equitable conduct of a claimant is asserting his claim in bankruptcy requires its subordination to other claims which in other respects are of the same class, and the case of Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162, holds that in determining what claims are allowable and how the debtor's assets should be distributed, a bankruptcy court must not necessarily apply the law of the State where it sits.

We must next consider whether the disabling rule hereinbefore stated should be extended to members of the family of William A. Schroeder and to Elizabeth Richter, whose husband, A. W. Richter, was an officer and director of the Franklin Building Company. I think the situation as to Mollie Schroeder, June Kuptz, and Elizabeth Richter (to the extent of $5,000) is clear. They were not in a fiduciary relationship. Their bonds were purchased with their own funds; there is no intimation in the evidence that such purchases were made as the agents of William A. Schroeder or A. W. Richter, respectively, or as a device or subterfuge to cover purchases by them. The Court of Appeals for the Seventh Circuit, in Re Lorraine Castle Apartments Bldg. Corporation, Inc., 149 F.2d 55, 57, held that Section 212 of the Bankruptcy Act does not apply to third parties, or to those who are under no fiduciary obligation. While that case did not deal with members of the immediate family of fiduciaries, it is persuasive as to the good faith situation now before the court. The claims of Mollie

268

Schroeder, June Kuptz, and Elizabeth Richter (to the extent of $5,000) should be allowed as filed.

 Our next consideration is the claim of Robert Schroeder, a son of William A. Schroeder, who purchased his bonds prior to the time he became a member of the bondholders' committee. Robert Schroeder had his offices in the same suite as his father during the period when the latter was a member of the bondholders' committee. While still a student Robert made his first purchase of bonds, when in 1942 he bought a $100 bond for $9. Robert spent some time during the war in the service, in the Navy, and during such absence his father handled the purchase of some bonds for him; however, all purchases were made with Robert's funds. A considerable portion of the bonds now owned by him were purchased from John Ruppa, in settling the litigation commenced by Ruppa and his associates. They had filed an involuntary petition for reorganization in 1943. There was much to indicate this proceeding was not a good faith attempt to reorganize the debtor. The court refused to permit the management of the premises by the bondholders' committee to be disturbed. Due to that consideration and also because of the necessity of determining the amount of ground rent for the ensuing years, the status quo was maintained and the proceeding was finally dismissed in 1947 at which time the bonds held by Ruppa and his associates were purchased. Under all of the circumstances I have concluded that the claim of Robert W. Schroeder should be allowed in the full amount of his bonds.

 There remains for consideration the claim of Elizabeth Richter based upon the $500 bond purchased for her by her husband, with his funds, in 1935 and her $1,000 bond purchased in the same manner in 1944. A. W. Richter, the husband of Elizabeth Richter, was one of the stockholders of the debtor corporation; he was an officer and a director. In the ordinary corporate set-up a dominant stockholder or a director is a fiduciary. Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281. But the Franklin Building Company was not the ordinary corporate set-up. There were only three stockholders. No stock had been sold to the public. Since 1932 the debtor corporation was inactive and apparently neither stockholders meetings nor directors meetings were held, although the same list of officers was reported annually to the Secretary of State. Although the question is much closer than those involved in the claims of non-committee members hereinbefore mentioned, I do not believe that the disabling doctrine hereinbefore described need be extended to an officer or director of an inactive corporation whose business of operating the building was in fact being handled by the bondholders' committee. The claim of Elizabeth Richter, based on the $1,500 worth of bonds, will be allowed in full.

The trustee will prepare the order disallowing the claims of Adelbert C. Schmidt (except for $1,000 of original issue), William A. Rosenberg, William A. Schroeder, and Lena Simonsen as filed, but allowing said claims at an amount equal to the cost price of the bonds. The attorneys for claimants whose claims have been allowed as filed will prepare suitable orders.