In the Matter of the Application of the People of the State of New York, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance, for an Order to Take Possession of the Property of and Rehabilitate the BOND AND MORTGAGE GUARANTY COMPANY.

In the Matter of a Plan of Readjustment of the Rights of Holders of Investments in a Mortgage Covering Premises Known as HALF MOON HOTEL, CONEY ISLAND, BROOKLYN, NEW YORK. (Guarantee No. 186,039.)

Supreme Court, Special Term, Kings County, March 29, 1950.

*Abraham Feinstein, Samuel M. Rossman* and *Charles H. Tuttle* for Walter McMeekan, as trustee.

*Leo E. Sherman* for Jack L. Alpert and another.

*James F. Donlan* for Bureau of Trust Supervision.

UGHETTA, J.   On December 17, 1935, a trustee for the holders of first mortgage certificates on the Half Moon Hotel in Coney Island, was appointed.   The trustee operated the property until March 1, 1947, when the Half Moon was sold.

Up to now three cash distributions totaling $404,596.19 have been made to certificate holders.   The trustee retains $66,337.85 which also will be distributed after claims against this sum are

disposed of. He now seeks an order confirming his final account, granting him an allowance for his services, granting his attorneys an allowance for their services, and giving him other relief not now germane.

When this order was applied for, a group of certificate holders opposed the granting of any fee to the attorneys who represented the trustee. The basis of this objection is that by having purchased certificates themselves, the attorneys forfeited the right to be compensated for their services. In addition, say the objectants, the attorneys should be ordered to pay over to the trustee whatever profits they have made as a consequence of having traded in the certificates of this trust.

The motion was referred to an Official Referee to hear and report, and after taking testimony, the Referee submitted his report. He reported that the objections of the certificate holders should be sustained to the extent that the attorneys for the trustee should be directed to surrender their certificates to the trustee and also directed to pay over to the trustee the profits they have reaped as a result of having purchased the certificates for less money than they have received from the distributions thus far made by the trustee. The Referee held in abeyance the question of the allowance for legal services and the other relief sought.

During the hearings before the Official Referee, the trustee's attorneys admitted having purchased certificates in this proceeding on six different dates, the first on September 25, 1941, and the last on July 1, 1946. The Referee has reported a profit to the attorneys of $17,437.18 on the first five purchases alone.

The attorneys admitted that they never disclosed the fact that they were buying certificates to any of the Justices who have presided over mortgage reorganization and rehabilitation matters. The trustee testified that he knew his attorneys were buying certificates. He stated that he saw nothing objectionable in this practice, although he did not purchase any certificates himself.

There is no issue of fact to be resolved. The trustee's attorneys have made a full disclosure of their purchases of certificates and disclaim being guilty of any impropriety in making such purchases.

The decisive question in this controversy is whether the attorneys for the trustee have breached a fiduciary duty that lay upon them by buying trust certificates while they were attorneys for the trustee without having made a more complete disclosure of the fact that they were making such purchases.

Loyalty tantamount to complete selflessness is the duty owed by a trustee to the beneficiaries of the trust. As early as 1816, in the case of *Davoue* v. *Fanning* (2 Johns. Ch. 252) this principle was recognized as a controlling force in equity in this State. In that case an executor who had power to sell, sold land which was part of the estate. The land was purchased by an individual who held it in trust for the executor's wife. When this became known to the beneficiaries of the estate they sued, asking that the sale be set aside. This relief was granted, the court holding that it did not matter that the sale had been consummated at a public auction and for a fair price since the fiduciary status of the executor barred him and his wife from purchasing the property.

The decision in the case was based on precedent in this country and in England as well as on the reasoning that if the executor or his wife were permitted to acquire the property as an individual, " the temptation to abuse of trust would be great and dangerous." (P. 256.) " However innocent," said the Chancellor, " the purchase may be in the given case, it is poisonous in its consequences." (P. 260.)

The English cases set forth in *Davoue* v. *Fanning* (*supra*) show clearly that from early times when equity was called upon to resolve a dispute in which it appeared that a fiduciary had obscured his self-interest at the expense of those to whom his duty ran, equity's instinctive reaction was to hold the fiduciary to a rigorous standard of conduct.

A typical case was *Campbell* v. *Walker* (5 Vesey 678, 13 Vesey 600, discussed at 2 Johns. Ch. 261–262). There real estate was devised to trustees to sell. They sold the real estate at auction and bought part of it for themselves at a fair price. " There was no proof that the purchase was at an undervalue, or that the sale was not *bona fide* and regular." (2 Johns. Ch. 261.) The legatees sought to have the sale set aside and it was so decreed. The court held that the trustees bought subject to having the sale set aside even though the purchase had been made under circumstances devoid of deceit. The mere fact that the trustee held the fiduciary status that he did prevented him from acquiring the property, however fairly he dealt with those to whom he owed the fiduciary duty. The only way for him to purchase safely, said the court, was to make a full disclosure to the court and seek permission to bid for the property.

The other cases cited in *Davoue* v. *Fanning* (*supra*) achieved the same result in similar circumstances. Trustees and other fiduciaries were made to surrender property acquired at the

expense of their beneficiaries without regard to the fairness of the transaction in which they had acquired the property. When the fiduciary relationship was disclosed to a court, the terms of the sale became immaterial. As it was put (rather quaintly to our eyes) in one case, "The ground of the rule is, that though you may see, in a particular case, that he has not made advantage, it is impossible to examine sufficiently, in ninety-nine cases out of a hundred, whether he has made advantage or not." (2 Johns. Ch. 263.)

The principle recognized in *Davoue* v. *Fanning* (*supra*) was reviewed in *Gardner* v. *Ogden* (22 N. Y. 327) and extended in the sense that it was held to include a relationship in which the fiduciary bond is not usually thought of as being as strong as that between a trustee and his *cestui qui trust* or an executor and the beneficiary of an estate. In that case an owner of lots employed a real estate firm to sell the lots. The firm sold them to a confidential clerk of the firm. The fact that the clerk was the buyer was unknown to the owner of the lots until he received the securities representing a purchase-money mortgage. He thereupon sought relief in equity, asking that the sale be set aside or that he be awarded the value of the land. The court ordered the clerk to reconvey those lots he still had title to, and to pay over the proceeds of the sales of the lots he had sold.

In reaching this result, the court stated the rule that applied to transactions of the kind it had before it and then referred to an unbroken line of cases in this country and in England which adhered to this rule. The statement of the rule, taken from an early treatise, was: " ' It may be laid down as a general proposition, that trustees, who have accepted the trust (unless they are nominally such, as trustees to preserve contingent remainders), agents, commissioners of bankrupts, assignees of bankrupts or their partners in business, solicitors to the commission, auctioneers, creditors who have been consulted as to the mode of sale, counsel, *or any persons who, being employed or concerned in the affairs of another, have acquired a knowledge of his property,* are incapable of purchasing such property themselves, except under the restrictions which will shortly be mentioned. For, if persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information, and not to exercise it for the benefit of the persons relying on their integrity. The characters are inconsistent.' " (P. 343.)

The cases cited in *Gardner* v. *Ogden* (*supra*) reaffirmed that it did not matter that actual fraud on the part of the fiduciary

could not be shown. For example, an opinion of the House of Lords in 1854 stated (cited at 22 N. Y. 347–348): " ' An agent has duties to discharge of a fiduciary character toward his principal; and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has, or can have, a personal interest, conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this principle adhered to, that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. It obviously is, or may be, impossible to demonstrate how far, in any particular case, the terms of such a contract have been the best for the *cestui que trust* which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or interests of those for whom he is a trustee, have been as good as could have been obtained from any other person; they may even, at the time, have been better. But still, so inflexible is the rule, that no inquiry on that subject is permitted. The English authorities on this subject are numerous and uniform.' ''

*Davoue* v. *Fanning* (*supra*), *Gardner* v. *Ogden* (*supra*), and the cases cited in both of those opinions indicate that the bar against a fiduciary acquiring property from those to whom he owes his loyalty is not an absolute one. Only when the fiduciary has not made known his position of self-interest is he barred. (See 2 Scott on Trusts, § 170.1, pp. 857–858.) But such notice must be clear and unequivocal.

" If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance." (*Wendt* v. *Fischer,* 243 N. Y. 439, 443.)

In the instant case, the trustee's attorneys made no such disclosure to those from whom they purchased the certificates. One member of the firm stated that " whenever a certificate holder came to our office or comunicated in writing about advice as to selling the certificate we always advised him not to sell." However, another member of the firm acknowledged that at the time each purchase of certificates was made, the former owner of the certificates was unknown, each sale being consummated through a broker. Even the notice that was given to those certificate holders who inquired about selling their certificates did not meet the requirement of full disclosure since that would have required mention of the attorneys' having bought certificates for their own account.

The trustee for the certificate holders in the instant case has a fiduciary status which brings him within the principle set out above, and requires of him undivided loyalty to the interests of the certificate holders.

The order of this court which appointed the trustee specifically stated that upon the trustee's signing the declaration of trust he was to hold title to the trust estate in trust for the benefit of the certificate holders. In his declaration of trust, the trustee declared that he held the property in trust to liquidate the estate and pay the proceeds to the certificate holders.

The trustee's attorneys are also bound to this same strict standard of conduct. This would appear to be self-evident in view of the confidential status that such an attorney acquires when he is retained. Whether or not self-evident, the principle has been followed without exception in many jurisdictions. The exhaustive opinion in *Presbyterian Church* v. *Plainfield Trust Co.* (139 N. J. Eq. 501) makes this clear. In that case an attorney for the executor-trustee of an estate purchased property which was part of the corpus of the estate. The sale was consummated with the utmost good faith, without any act by the attorney which improperly influenced the executor-trustee to make the sale. Yet upon application by a beneficiary the attorney was required to restore to the estate the property he had purchased and any profits he had made from the sale of property he had bought from the estate.

The court's opinion reflects the research it gave to the issue of whether an attorney for a fiduciary is required to display the same standard of loyalty that is demanded of the fiduciary. After examining authorities in State and Federal courts in this country and in the courts of England, the opinion concluded that an attorney for a fiduciary is bound to adhere to the same standard his client is required to observe. The court refused to " constrict the scope and amplitude of the rule and thus depart from that which has survived so long in the jurisprudence of other jurisdictions." (139 N. J. Eq. 501, 514.)

" Tersely stated ", said the court (pp. 513–514), " the incapacity of the attorney of the executor or trustee to become a purchaser of the assets of the estate without the full knowledge and consent of *all parties in interest* rests upon the ground of public policy. The fairness and adequacy of the purchase price, and the *bona fides* or *mala fides* of the transaction are wholly immaterial."

It is not necessary to go beyond the facts of the instant case to see the justification for holding the attorneys for the trustee

to the same high standard of conduct required of the trustee. The Official Referee has reported that " The detailed claim for services made herein by them .(the attorneys) shows that they were familiar with every act of the trustee and acted for or with him in every matter, big or little, affecting the rights of these certificate holders."

The obvious objection to the attorneys' buying the certificates is that their position of trust could, at least occasionally, give them an insight into the affairs of the trust which would give them an advantage over the certificate holders.

There is another objection. It is true that if a trustee buys a certificate he then, in his individual capacity has the same objective as every other certificate holder, i.e., the redemption of the certificates at the optimum price. But it does not follow that because he has that objective he therefore serves the certificate holders better than he would have had he not acquired his individual interest. His judgment, however good, may to some extent be warped by the fact that he is a certificate holder. Confronted with a set of facts requiring a decision, an attorney with no personal financial stake, might advise a compromise or the acceptance of a small sacrifice which would eventually be to the advantage of the trust estate whereas an attorney who stands to suffer a personal loss himself would be inclined to be more adamant but not so discerning.

The principle that a fiduciary owes the highest loyalty to those whom he serves applies not merely to a few nicely delineated categories in the field of fiduciary relationships. " Equity refuses to confine within the bounds of classified transactions its precept of a loyalty that is undivided and unselfish " (*Meinhard* v. *Salmon*, 249 N. Y. 458, 467). Ninety years ago, the principle of undivided loyalty was held to apply to the conduct of a real estate broker's clerk who had profited at the expense of a client of the broker (*Gardner* v. *Ogden, supra*). In *Wendt* v. *Fischer* (*supra*), a member of a firm of real estate brokers was held to be debarred from buying the property from a client of the firm without disclosing to the client his role in the transaction. *Meinhard* v. *Salmon* (*supra*) held that coadventurers are bound by ties of loyalty.

It is not necessary to ascertain exactly how intense is the fiduciary duty owed by the trustee's attorneys to the certificate holders in the instant case. It is clear enough that it is at least as strong as that owed by a clerk in a real estate office to a client of his employer, as that owed by a real estate agent to his principal, or that owed by one coadventurer to another.

The cases involving the real estate brokers are particularly pertinent to the instant controversy. In those cases, the decision to put the property up for sale came from the property owner, not the fiduciary who profited. In the instant case, the certificate holder, not the attorneys decided to sell. The purchase price for the land was acceptable to the land owner as was the price for the certificate acceptable to the certificate holder. There was no actual fraud present in the real estate cases and none charged in the instant controversy. Yet upon a showing of the fiduciary relationship in the real estate cases the brokers who owed the duty were divested of their profits. The Official Referee has held that the same result should be reached in the instant controversy and the court concurs in this conclusion.

In the cases mentioned above, the transactions by which a fiduciary profited at the expense of those to whom he owed a duty were set aside when the beneficiary who had suffered the loss protested. In the instant dispute, the protest comes, not from the certificate holders from whom the attorneys purchased certificates but from others who hold certificates in the same trust. This difference in the source of the protest is not important.

As was noted above, the trustee's attorneys made their first purchase of certificates on September 25, 1941, and their last on July 1, 1946. Thus, for a period of almost five years the attorneys for the trustee maintained toward the certificate holders an attitude that was hostile in the sense that they were ready to bargain with them for the purchase of their certificates. This hostility, directed as it was toward those to whom the attorneys' fiduciary duty flowed, is exactly the sort of attitude which courts of equity have sought to discourage by divesting fiduciaries of all that they gain at the expense of those to whom the fiduciary duty is owed.

The critical considerations in a controversy such as this are whether the fiduciary has been involved in a profitable transaction in which he could have used to his advantage knowledge acquired in his fiduciary capacity and whether the fiduciary made a full disclosure to those to whom his duty ran. As noted above, the trustee's attorneys were in a position to acquire information about the trust which would have given them an advantage. The only '' notice '' given any certificate holder was received only by those who made inquiry of the trustee's attorneys. That '' notice '' was advice not to sell. Such '' notice '' is not sufficient to meet the requirement of unreserved, unambiguous disclosure (*Wendt* v. *Fischer, supra*).

The case of *Donnelly* v. *Consolidated Investment Trust* (99 F. 2d 185) cited by the trustee's attorneys is distinguishable from the instant matter. There the trustees caused letters to be sent to *all* shareholders stating that a large banking house regarded the shares as worth more than the then market value and advised shareholders not to sell. The importance of notice to those served by a fiduciary of the fiduciary's breach of the rule of undivided loyalty is emphasized by the case of *City Bank Farmers Trust Co.* v. *Cannon* (291 N. Y. 125). There knowledge by the settlor of a trust that the trustee was violating the rule estopped the settlor from holding the trustee liable for the financial consequences of his violation of the rule.

One of the trustee's attorneys stated in his testimony before the Official Referee that the certificates were bought '' on a gamble '' with no reliance being placed on '' inside information ''. The court believes that this sort of activity by a fiduciary should be discouraged. A fiduciary who is being paid for his services suffers slight hardship in being denied the right to gamble in those securities whose value may be affected by confidential information he has access to.

The contention is made by the trustee's attorneys that when they bought certificates from brokers they merely took advantage of an opportunity open to any member of the public. This aspect of the controversy puts the attorneys in the same position as those trustees who make their purchases at an auction sale. As noted above, the fact that a purchase is made in this manner does not relieve the trustee of the consequences of having profited at the expense of those he serves.

The touchstone by which a fiduciary's loyalty is to be measured has been reiterated by the Court of Appeals in the recent case of *City Bank Farmers Trust Co.* v. *Cannon* (*supra*). The court stated (291 N. Y. 125, 131), '' The standard of loyalty in trust relations does not permit a trustee to create or to occupy a position in which he has interests to serve other than the interest of the trust estate. Undivided loyalty is the supreme test, unlimited and unconfined by the bounds of classified transactions.''

The report of the Official Referee is approved.