Edgar F. Hazleton, S.
This is a motion to deny the accounting trustees their commissions. The trust being accounted for contained shares of the capital stock of the Singer Manufacturing Company of which one of the two trustees, John Morton, is an executive officer. The account shows that the two trustees, on July 10, 1957, sold to the Singer Manufácturing Company 8,543% shares of the capital stock of said company for $361,921.24. At the time of said sale, there existed a stock purchase plan whereby those associated with the company could purchase shares of its stock held by the company. The stock was sold to realize funds needed to help pay the numerous creditor-assignees who have claims against the trust corpus.
The petitioner is a creditor whose claim cannot at this moment be paid because of insufficient funds. He bases this motion on the grounds that the sale of the stock was improper because at least one of the trustees, John Morton, violated his duty of undivided loyalty by selling trust securities to a corporation of which he is an executive officer and has the power under a stock purchase plan of the company to repurchase said securities. The other trustee, Arthur Keeler Bourne, I understand, is also a stockholder of the Singer Company. The trustee, Morton, has submitted a sworn statement that he will not purchase any of the Singer Company stock pursuant to the company’s stock purchase plan at any time in the future. The trust suffered no loss by reason of the transaction.
*850 Unquestionably, the rule to follow is for a fiduciary never to put himself in a position such as the instant one where he has to explain his acts. The motives of the fiduciary and the result of his act are not the controlling factors. The test is that the act of the fiduciary must be selfless. The rule, it seems, requires repeating, although recently restated in Matter of People (Bond & Mtg. Guar. Co.) (199 Misc. 108, 111-112, mod. 277 App. Div. 1132, mod. 303 N. Y. 423):
“ The principle recognized in Davoue v. Fanning (supra [2 Johns. Ch. 252]) was reviewed in Gardner v. Ogden (22 N. Y. 327) and extended in the sense that it was held to include a relationship in which the fiduciary bond is not usually thought of as being as strong as that between a trustee and his cestui qui trust or an executor and the beneficiary of an estate. In that case an owner of lots employed a real estate firm to sell the lots. The firm sold them to a confidential clerk of the firm. The fact that the clerk was the buyer was unknown to the owner of the lots until he received the securities representing a purchase-money mortgage. He thereupon sought relief in equity, asking that the sale be set aside or that he be awarded the value of the land. The court ordered the clerk to reconvey those lots he still had title to, and to pay over the proceeds of the sales of the lots he had sold.
‘‘ In reaching this result, the court stated the rule that applied to transactions of the kind it had before it and then referred to an unbroken line of cases in this country and in England which adhered to this rule. The statement of the rule, taken from an early treatise, was: ‘ “ It may be laid down as a general proposition, that trustees, who have accepted the trust (unless they are nominally such, as trustees to preserve contingent remainders), agents, commissioners of bankrupts, assignees of bankrupts or their partners in business, solicitors to the commission, auctioneers, creditors who have been consulted as to the mode of sale, counsel, or any persons who, being employed or concerned in the affairs of another, have acquired a knowledge of his property, are incapable of purchasing such property themselves, except under the restrictions which will shortly be mentioned. For, if persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information, and not to exercise it for the benefit of the persons relying on their integrity. The characters are inconsistent.” ’ (P. 343.)
“ The cases cited in Gardner v. Ogden (supra) reaffirmed that it did not matter that actual fraud on the part of the *851 fiduciary could not be shown. For example, an opinion of the House of Lords in 1854 stated (cited at 22 N. Y. 347-348): ‘ ‘ ‘ An agent has duties to discharge of a fiduciary character toward his principal; and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest, conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this principal adhered to, that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. It obviously is, or may be, impossible to demonstrate how far, in any particular case, the terms of such a contract have been the best for the cestui que trust which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or interests of those for whom he is a trustee, have been as good as could have been obtained from any other person; they may even, at the time, have been better. But still, so inflexible is the rule, that no inquiry on that subject is permitted. The English authorities on this subject are numerous and uniform.” ’ ”
However, when it comes to depriving the trustees of their considerable commissions because the sale under attack involved a conflict of interest, I believe such action by this court upon the facts in this case would be drastic and unwarranted. No loss to the estate or bad faith upon the part of the trustees has been shown and this court is not requested to set aside the sale, but solely to penalize the trustees. On the whole I find the trustees have performed their duties most creditably. (Matter of Penzato, 200 Misc. 751, 752; Matter of Gavey, 147 Misc. 332, 337.)
The motion of petitioner is denied in its entirety. Proceed accordingly on notice.