In the Matter of the Estate of JOHN MORTON GLEN, Deceased.*

JAMES GLEN, Petitioner, Appellant; ELEANOR GLEN, Individually and as Administratrix with the Will Annexed of the Estate of JOHN MORTON GLEN, Deceased, and Another, Respondents.

First Department, May 15, 1936.

*Revg. 157 Misc. 753.

*Alexander J. Feild*, for the petitioner-appellant.

*Frederic P. Rich* of counsel [*Robert McC. Marsh* with him on the brief; *Delafield, Thorne & Marsh*, attorneys], for the respondents.

McAVOY, J.   On March 25, 1932, the decedent, John M. Glen, opened a joint account with the New York Savings Bank in the names of himself and his brother James Glen, the petitioner, payable to either or to the survivor.   When the decedent died on July 15, 1934, the balance in this account was $4,234.91, which James Glen claims by right of survivorship.   Eleanor Glen, decedent's widow and administratrix with the will annexed of his estate, asserts that by reason of the provisions of a certain written instrument which she and the decedent signed on August 8, 1912, the opening of said account was fraudulent and claims an equitable lien upon said balance in favor of the decedent's estate.   The written instrument signed by the parties contains the will of the decedent bequeathing to his wife four-fifths of the estate belonging to him at the time of his death and his agreement not to revoke said will.

On August 8, 1912, the decedent and Eleanor Glen, his wife, who had been living separate and apart, entered into a written contract for the purpose of adjusting their marital difficulties.   The contract was a formal document, executed in duplicate under seal in the presence of solicitors at Dundee, Scotland, which was the marital domicile.   It recited that the parties had been married in 1894; that they had separated in 1900; that an order for maintenance had been obtained by the respondent under which the decedent was in default and owed the respondent £400; that the respondent owned and had carried on for five years a dressmaking business in Leeds; that the decedent had received an appointment as mechanical engineer in Vancouver, B. C.; that there were no children, and that the parties had agreed to live together on certain terms and conditions thereupon set forth in the agreement.   After providing for a cancellation of the petitioner's arrears of maintenance, the sale of respondent's dressmaking business and application of the proceeds thereof to the traveling expenses of both parties to Vancouver, and after providing that the decedent pay the respondent, Eleanor Glen, £90 during the next two years

over and above her suitable maintenance as his wife, the document continued as follows: " (Fourth) In consideration of the reciprocal obligations and provisions herein before contained, as a condition of the parties coming together again as above mentioned, as a material condition of this agreement and as a provision by each in favour of the other, not to be revoked, (there being no children of the marriage) the parties hereto hereby provide as follows, viz:— I the said John Morton Glen hereby assign dispone and convey and devise legate and bequeath to Richard Davidson, Billposting Manager, Dundee, and residing at 133 Victoria Road, Dundee, the whole means and estate belonging to me at the time of my death or over which I have power of appointment or disposal, as Trustee and Executor for the following purposes, viz: — (First) Payment of my debts, '(secondly) payment of four fifths of the residue of my said means and estate to my said wife in the event of her surviving me * * *, (Thirdly) Payment of the remaining one fifth of said residue to the said Richard Davidson as an individual * * * and likewise I the said Mrs. Eleanor Morton or Glen hereby assign dispone and convey and devise legate and bequeath to the said Richard Davidson the whole means and estate belonging to me at the time of my death or over which I have power of apportionment or disposal, as Trustee and Executor for the following purposes, viz.:—(Firstly) payment of all my debts, (Secondly) payment of four fifths of the residue of my means and estate to my·said husband in the event of him surviving me * * * and (Thirdly) payment of the remaining one fifth of residue to the said Richard Davidson as an individual."

The document (dated August 8, 1912) was admitted to probate by the Surrogate's Court of the county of New York as John Morton Glen's last will and testament, and letters of administration c. t. a. were issued to the respondent as his widow.

In this case the decedent, John Morton Glen, fully performed his agreement not to revoke his will of 1912, because he died without doing so. This is conclusively established, because said will has been probated and the respondent, his widow, Eleanor Glen, has qualified as the administratrix of his estate with this identical will annexed and is enjoying the full benefits thereof.

The question presented is: Whether in the lifetime of John Morton Glen he could transfer to his brother certain of his own property in view of the foregoing agreement.

The respondents do not dispute the legal title of the petitioner to the balance in the joint bank account in question. Indeed the statute makes such title absolute in the absence of fraud or undue influence. (Banking Law, § 249.)

The "fraud or undue influence" referred to in the statute (Banking Law, § 249) must be practiced on the person opening the joint bank account, which respondents do not claim to be the fact in this case.

The respondents do not claim that any fraud or undue influence was practiced on the decedent John Morton Glen by any one, but contend that he perpetrated a fraud on his wife, Eleanor Glen, by opening this joint bank account in the names of himself and his brother, James Glen, with the right of survivorship, because it reduced the amount of personal property owned by him at the time of his death and, therefore, reduced the amount to be received by her under his will. Such fraud, even if proved, is not within the purview of this statute.

To be available as a defense or counterclaim in this case fraud would have to be pleaded in one of three ways. The respondents have followed none, because the facts did not warrant their following any.

Actual fraud is not relied on, so we will consider the other two forms of pleading.

The only case where mere intent to defraud is sufficient to render a transaction fraudulent and void is where a conveyance is made with intent to defraud creditors. It is true respondents allege that this bank account was opened with intent to defraud them of their rights under the instrument of August 8, 1912, but there is no allegation or proof of the relation of debtor and creditor between decedent and respondents or of any facts from which such relationship can be inferred. Certainly the instrument of August 8, 1912, does not create it as a matter of law.

The intent to defraud is made "a question of fact" by statute (Pers. Prop. Law, § 37), and, as the court below excluded all of the proof offered by the respondents, it is impossible that such intent to defraud could have been found.

Therefore, there is no support for the theory that the opening of the joint account was a conveyance with intent to defraud the respondents as creditors.

The only other kind of fraud on which the respondents could rely is constructive or legal fraud.

The respondents have utterly failed to allege or prove any facts or circumstances warranting the finding of fraud by construction. The only part of the answer that might be intended as an allegation of constructive or legal fraud is the allegation that the opening of the joint bank account was "in fraud of the rights of the respondents" under said instrument of August 8, 1912. This, of course, is merely the statement of a conclusion without the allegation of

any facts from which it might be drawn. There is no allegation of facts from which a fiduciary or trust relationship may be implied or imposition or duress alleged from which fraud might result as a conclusion of law. As all of the evidence offered by respondents was ruled out, there was no proof of any such facts.

It is clear, therefore, that no fraud on the respondents was proved, and the court below erred in not striking out their defense of fraud and in not dismissing their counterclaim of fraud.

The contract embodied in the instrument of August 8, 1912, has been fully executed by the decedent. Furthermore, it did not give the respondents any interest in or control of the decedent's property during his lifetime, or restrict in any way his right to use or dispose of it as he might wish while he lived.

Assuming that the decedent opened the joint bank account with the design and intent to reduce the amount his wife would receive under his will, still such design and intent would not make the opening of said account a fraud on her.

An irrevocable title to the joint bank account vested in the petitioner at the time it was opened, and said account was not a part of the decedent's estate at the time of his death.

All of the evidence offered by the respondents was properly excluded, but if all of it had been admitted it would not support the decree appealed from.

The decree should be reversed, with costs to the petitioner, and a decree should be directed for the petitioner striking out respondents' affirmative defense, dismissing their counterclaim and ordering the delivery to the petitioner of the bank book No. 383,744 issued by the New York Savings Bank, and the proceeding remitted to the Surrogate's Court for further action in accordance with this opinion.

MARTIN, P. J., O'MALLEY, GLENNON and COHN, JJ., concur.

Decree unanimously reversed, with costs to the petitioner, and a decree directed for the petitioner striking out respondents' affirmative defense, dismissing their counterclaim and ordering the delivery to the petitioner of the bank book No. 383,744 issued by the New York Savings Bank, and the proceeding remitted to the Surrogate's Court for further action in accordance with opinion. Settle order on notice.