CITY BANK FARMERS TRUST COMPANY et al., as Trustees, Respondents, *v.* EUGENE T. CANNON et al., Defendants, and WILLIAM B. LEVET, as Successor Guardian ad Litem, for CHARLES A. CANNON, JR., et al., Infants, Defendants-Appellants.

Argued June 7, 1943; decided October 21, 1943.

*William B. Levet, guardian ad litem,* and *S. James Robbins* for appellants. There was no such acquiescence, consent or ratification by the donor and life beneficiary of the trust, as to constitute a waiver of the trustee's divided loyalty and breach of duty. (*Wendt* v. *Fischer,* 243 N. Y. 439; *Adair* v. *Brimmer,* 74 N. Y. 539; *Matter of Madura* v. *City of New York,* 238 N. Y. 214.) The Appellate Division was correct in holding that the circumstances of the affiliation were such that it placed the

trustee in a position of divided loyalty as a matter of law. (*Meinhard* v. *Salmon,* 249 N. Y. 458; *Matter of Stone,* 138 Ohio St. 293; *Matter of Junkersfeld,* 244 App. Div. 260; *Munson* v. *Syracuse, Geneva & Corning R. R. Co.,* 103 N. Y. 58; *Cox* v. *Stokes,* 156 N. Y. 491; *Matter of Lagemann,* 178 Misc. 352.) There was error of law in disregarding the trustee's duty of full disclosure and other requisites of estoppel and overlooking the absence of proof of compliance therewith by the trustee. (*Adair* v. *Brimmer,* 74 N. Y. 539; *Wendt* v. *Fischer,* 243 N. Y. 439; *Matter of Junkersfeld,* 244 App. Div. 260.) In holding that in this case it was not incumbent upon the trustee to advise the *cestui que trust* how a court of equity would treat the facts of divided loyalty, the Appellate Division committed error of law. (*Adair* v. *Brimmer,* 74 N. Y. 539; *Matter of Frame,* 245 App. Div. 675; *Matter of Young,* 249 App. Div. 495, 274 N. Y. 543; *Pyle* v. *Pyle,* 137 App. Div. 568, 199 N. Y. 538.) The courts below committed error of law in finding that the donor had full knowledge of the facts and of her legal rights because there was no evidence to support such findings. (*Matter of Long Island Loan & Trust Co.,* 92 App. Div. 1, 179 N. Y. 520; *Smith* v. *Howlett,* 29 App. Div. 182; *Matter of Young,* 249 App. Div. 495, 274 N. Y. 543; *Matter of Stone,* 138 Ohio St. 293.) In holding that the trustee acceded to the wishes of the donor in retaining the bank stock, the court overlooked the total absence of evidence sustaining such contention by the trustee. (*Newman* v. *Dore,* 275 N. Y. 371; *Lawrence* v. *First Nat. Bank,* 266 Mich. 199.) The courts below improperly held that the donor had ratified the breach of trust merely by executing the amendment to the trust. (*Adair* v. *Brimmer,* 74 N. Y. 539.)

*C. Alexander Capron, Charles Angulo, Richard J. Turk, Jr.,* and *William A. Green* for respondents. The court below correctly held that in retaining the trust's shares of the National City Bank, the trust company did not commit a breach of trust, because such retention was with the approval and in accordance with the wishes of the settlor, who had full knowledge of the facts and full control of the trust. (*Central Hanover Bank & Trust Co.* v. *Russell,* 290 N. Y. 593; *Lawrence* v. *First Nat. Bank & Trust Co.,* 266 Mich. 199; *Van Cott* v. *Prentice,* 104 N. Y. 45; *Mertz* v. *Guaranty Trust Co.,* 247 N. Y. 137; *Giles D. M. Co.* v.

*Klauder-Weldon D. M. Co.,* 233 N. Y. 470; *Ungrich* v. *Ungrich,* 131 App. Div. 24.) Although control may still be lodged in the donor of a trust, the trust agreement is valid so long as it is not revoked and is effectual to transfer the trust property. (*Van Cott* v. *Prentice,* 104 N. Y. 45; *Robb* v. *Washington & Jefferson College,* 185 N. Y. 485; *Von Hesse* v. *MacKaye,* 136 N. Y. 114; *Schenectady Trust Co.* v. *Emmons,* 261 App. Div. 154, 286 N. Y. 626.) It is unsound to say that, if a trust acquires an interest in stock of the corporate trustee, such trustee is, as a matter of law and without proof of other facts, placed in a position of divided loyalty, and commits a breach of trust if it continues to hold such shares. (*Beach* v. *Cooke,* 28 N. Y. 508; *Reich* v. *Cochran,* 196 App. Div. 248, 236 N. Y. 576, 265 U. S. 574; *Schintzuis* v. *Lackawanna Steel Co.,* 224 N. Y. 226; *People ex rel. Sweet* v. *Lyman,* 157 N. Y 368; *Ward* v. *Hasbrouck,* 169 N. Y. 407; *Hirsch* v. *New England Navigation Co.,* 200 N. Y. 263; *Wendt* v. *Fischer,* 243 N. Y. 439; *Matter of Riker,* 124 N. J. Eq. 228, 125 N. J. Eq. 349; *Matter of Paterson Nat. Bank,* 125 N. J. Eq. 73, 127 N. J. Eq. 362; *Matter of Greenawalt,* 343 Penn. St. 413; *Matter of O'Brien,* 18 D. & C. [Penn.] 501; *Young* v. *Hood,* 209 N. C. 801; *Harris* v. *Citizens Bank,* 172 Va. 111; *Ellinger* v. *Brooklyn Trust Co.,* 248 App. Div. 897.)

THACHER, J. The action was brought by City Bank Farmers Trust Company and two individuals, as trustees, under a deed of trust for the judicial approval and settlement of their accounts. The only questions presented on this appeal were raised by the guardian *ad litem* of the infant defendants interested in the trust who sought to surcharge the corporate trustee for loss on investments in National City Bank stock incurred after the Bank's affiliation with the trustee. None of the other defendants has objected to the accounts.

On August 5, 1926, Mary E. Cannon as donor executed and delivered to City Bank Farmers Trust Company, then known as Farmers' Loan and Trust Company, as trustee, a deed of trust and transferred to it cash and securities to be held upon the trusts set forth in the deed. Mrs. Cannon was to receive the income during her life and upon her death the trust estate was to be divided into five equal shares and each share was to be held in trust for one of five children. The donor reserved the right to deliver to the trustee additional property to be

held in trust under the indenture and expressly reserved the right to amend or revoke the trust in whole or in part, at any time, from time to time and as frequently as she desired. Such amendment or revocation was required to be in writing, executed and acknowledged by the donor as a deed to real estate for record in the State of New York, and delivered to the trustee.

The trustee was expressly authorized to retain securities " so long as it may seem proper " and also to sell the same from time to time in its discretion and to invest and reinvest the proceeds thereof and any other cash at any time in its hands as trustee in such securities as to it may seem wise without being limited to investments legally authorized for trust investments.

Included in the securities delivered to the trustee under the deed of trust were 300 shares of National City Bank stock of the par value of $100. During the years 1926, 1927 and 1928 the donor requested the trustee to increase this holding of National City Bank stock through the exercise of subscription rights and to this end made additions of cash and securities to the trust to be used in partial payment for the additional shares. The result of these transactions was that prior to the affiliation of the National City Bank with the trustee there were held in the trust 3,000 shares of the Bank stock having a par value of twenty dollars a share. There is no suggestion that these investments were improper when made and both courts below have found that they were made in good faith, upon careful consideration and in the exercise of sound business judgment. It is, however, contended that by the affiliation of the Bank and the Trust Company the latter as trustee became the beneficial owner of its own stock, was thus placed in a position of divided loyalty and should be surcharged for retaining the Bank shares which were inseparable from beneficial ownership of its own shares. The affiliation was accomplished by increasing the capital stock of the Bank and exchanging the new shares for all of the shares of the Trust Company on a basis of five Bank shares for one Trust Company share. The Trust Company shares were placed in trust for all the shareholders of the Bank each of whom acquired a *pro rata* beneficial interest in all the shares of the Trust Company. Upon affiliation the trustee retired from the commercial banking field and this part of its business was taken over by the Bank. Reciprocally the Bank, so far as prac-

ticable, turned over its trust business to the trustee. After affiliation the two companies had several common officers and directors. Earnings distributed as dividends by the trustee were paid to the shareholders of the Bank. This was required because under the trust in which the trustee's shares were held, the shareholders of the Bank were the beneficial owners of the trustee's stock. Thus there was one group of shareholders who together owned the entire beneficial interest in both companies. Gains and losses of each company affected them all alike, proportionately with the number of Bank shares each of them held. Ownership of these shares was inseparable from *pro rata* beneficial ownership of the trustee's shares and no one could acquire or dispose of this beneficial interest except by acquiring or disposing of Bank shares. The trustee with the donor's approval and active participation turned in the old certificates of stock of National City Bank held in the trust and received for them new certificates exactly like the old ones except for an additional indorsement showing that ownership of the stock carried with it a proportionate beneficial interest in the stock of the trustee. Thus the trustee acquired as an asset of the trust a substantial beneficial interest in its own stock which could only be sold by selling its shares in the National City Bank with which it was so closely affiliated. The fact is established that Mrs. Cannon not only approved the investment but insisted that the shares be retained by the trustee and as long as she lived was opposed to a sale of these shares. In this opposition she was supported by the honest judgment of the trustee. Nor is there any doubt that the donor was fully cognizant of her full powers of revocation and modification.

The standard of loyalty in trust relations does not permit a trustee to create or to occupy a position in which he has interests to serve other than the interest of the trust estate. Undivided loyalty is the supreme test, unlimited and unconfined by the bounds of classified transactions. (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464.) Undivided loyalty did not exist after affiliation of the trustee and the Bank because of the ownership by the trust of the shares of the Bank. The officers of the trustee responsible for the administration of the trust were under a duty with unremitting loyalty to serve both the interest of the Trust Company and the interest of the trust estate.

These were conflicting interests insofar as the trust investment in the National City Bank shares required decision whether to hold or to sell the shares in a falling market. The sale of this large number of shares might have seriously affected the interests of the Trust Company by depressing the value of these shares in a rapidly deteriorating market. Consequently the trustee had conflicting interests to serve in deciding to sell or not to sell. We do not for a moment suggest that the trustee did not act in the utmost good faith. Both courts below so found. But that is not enough for when the trustee has a selfish interest which may be served, the law does not stop to inquire whether the trustee's action or failure to act has been unfairly influenced. It stops the inquiry when the relation is disclosed and sets aside the transaction or refuses to enforce it, and in a proper case, surcharges the trustee as for an unauthorized investment. It is only by rigid adherence to these principles that all temptation can be removed from one acting as a fiduciary to serve his own interest when in conflict with the obligations of his trust. (*Dutton* v. *Willner,* 52 N. Y. 312, 318; *Munson* v. *Syracuse G. & C. R. R. Co.,* 103 N. Y. 58, 74; *Meinhard* v. *Salmon, supra; Wendt* v. *Fischer,* 243 N. Y. 439, 444.) The rule is designed to obliterate all divided loyalties which may creep into a fiduciary relationship and utterly to destroy their effect by making voidable any transactions in which they appear.

In continuing to act as trustee and retaining the shares, the respondent Trust Company violated the rule of undivided loyalty and is accountable for the loss on the shares unless the donor by approving the investment and its retention has estopped the guardian *ad litem* and the infant remaindermen he represents from objecting to the investment. A similar problem was presented in *Central Hanover Bank & Trust Co.* v. *Russell* (290 N. Y. 593 [1943]). There we held that a settlor of a trust, who retained a testamentary power of appointment over the remainder limited upon life estates of the settlor and of her sister, by joining with her sister in approving investments of funds of the trust in the stock of the corporate trustee precluded the appointees named in her will from objecting to the investments thus approved. In the *Russell* case, the power retained was a power to appoint by will. Here we are concerned with powers to change and to revoke the trust.

A settlor who reserves absolute power of modification and revocation possesses all the powers of ownership and for many purposes is treated as the absolute owner of the property held in trust. Thus *section 145 of article 5* of the Real Property Law provides: '' Where the grantor in a conveyance reserves to himself for his own benefit, an absolute power of revocation, he is to be still deemed the absolute owner of the estate conveyed, so far as the rights of creditors and purchasers are concerned.'' This section of the Real Property Law is applicable to personalty as well as realty. (*Matter of Moehring,* 154 N. Y. 423; *Matter of Cooksey,* 182 N. Y. 92.)

Similarly, the courts of this State have held that where a general power of appointment or a power to revoke the trust has been reserved by the settlor, the period of suspension of the power of alienation commences upon the expiration of the power, usually the death of the settlor, and not upon the creation of the trust. (*Schenectady Trust Co.* v. *Emmons,* 261 App. Div. 154, 160; 3rd Dept. [1941], affd. 286 N. Y. 626. See, also, *Equitable Trust Co.* v. *Pratt,* 117 Misc. 708, 714, 715 [1922], affd., on opinion below, 206 App. Div. 689.) In such cases remaindermen have no vested interests until the retained powers of the settlor are terminated, usually by death. (*Bullen* v. *Wisconsin,* 240 U. S. 625 [1916]; *Saltonstall* v. *Treasurer & Receiver General,* 256 Mass. 519 [1926]; *Corliss* v. *Bowers,* 281 U. S. 376 [1930].)

Since the settlor reserved the right to exercise all the powers of ownership insofar as the trust was concerned, we hold that her action in approving the exchange of National City Bank shares for shares carrying a beneficial interest in the shares of the corporate trustee and in opposing any sale of the new shares was an effective estoppel not only against her own objections but also against an objection by the recipients of her bounty to the acts of the trustee which she approved. The donor approved the investments and their retention in advance with full knowledge of the resulting divided loyalty and of her own power to remove the trustee or otherwise to revoke or amend the trust and do as she pleased with these shares. She was fully apprised of her legal rights and the decision in *Adair* v. *Brimmer* (74 N. Y. 539) can have no application here. In this case we are not confronted with any failure to exercise

good faith and sound business judgment in retaining the investments and express no opinion upon the question of estoppel in such a case.

The judgment should be affirmed, without costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment affirmed.