Wenzel, J.
The decree under review, inter alia, settled an intermediate account of the two cotrustees of a testamentary trust, for the period commencing July 18, 1935, and ending March 12, 1945, granted commissions to the trustees and allowances to their attorneys, and authorized the trustees to sell certain shares of stock of a corporation known as Hubbell-Coligni Corporation, which are part of the assets of the trust estate, in order to provide funds to pay the life beneficiary, Henry M. Hubbell, who was the testatrix’ husband and also is one of the trustees, the sum of $10,000 as a distribution for the year 1944, and to pay administration expenses. The objectants are some of the remaindermen.
*136 At the time of the testatrix’ death, on May 15, 1931, she and her husband each owned 618 shares of stock of the corporation mentioned, constituting all the outstanding stock. The corpus of the trust consisted of little in addition to all the testatrix’ stock. In accordance with the terms of her will and codicil, her husband was to be paid “ the interest and income ” of the corpus during his lifetime, but, if that did not equal the sum of $10,000 in any year, advances were to be made from the corpus, if requested by him, “ to make up a guaranteed income of not less than ” that amount.
Hubbell, seventy-nine years of age at the time of the hearing before the Surrogate on May 19, 1947, has been an officer and director of the corporation since its organization in 1928. A trust officer of the cotrustee was also an officer and director during the period commencing August 26, 1936, and ending in March of 1946. The conduct of the trustees in the management of the affairs of Hubbell-Coligni Corporation may be examined. (Matter of Auditore, 249 N. Y. 335.)
The business of the corporation was the ownership and operation of tenant-occupied property, mainly in the city of New Rochelle, New York. Included were Hubbell’s residence and four certain buildings occupied for industrial purposes by Hubbell Hardwood Door Company, a corporation controlled by him. These parcels had been owned by Hubbell-Coligni Corporation since prior to the time of the testatrix’ death, and the testatrix, in her will, recommended that her trustees hold her securities as part of the corpus of the trust.
Accordingly, it is our opinion that she authorized whatever self-dealing was involved by virtue of the tenancies above mentioned. In such event, the measure of the fiduciaries’ obligation to the trust is that they act in good faith and with sound judgment. (City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125, 133-134; Matter of Ridings, 297 N. Y. 417.) Under the circumstances disclosed by the record, including the depressed economic conditions extant during a good part of the period covered by the account, it has not been established that there has been any breach of the obligation in connection with these tenancies.
Nor may it be said that there has been negligence or misconduct, upon this record, in failing to dispose of any of the property owned by Hubbell-Coligni Corporation, whether income-producing or not, or in failing to change the nature of the investment of the corpus, that is, in stock of that corporation. *137 The annual net income of the corporation during the period covered by the account was never less than $5,119.71 (in 1942), or more than $9,657.79 (in 1938), before application of a reserve for depreciation for wear. The reserve, however, resulted in a net loss in each year and dividends never were paid. Whether the trustees, in the management of the corporation, were justified in applying the reserve or not, it would have been necessary to invade the corpus each year to make up the sum of $10,000 for the life beneficiary, in the light of the amount of income each year. Because of the losses thus established, the trustees sold a sufficient number of shares of the trust-owned stock to the corporation itself from year to year, commencing in 1935 and up to and inclusive of 1943, at the price of $370.43 per share, which was the book value based on values fixed in a transfer tax proceeding and appraisals in 1931, in order to realize and make available that sum each year for him, and in 1935 also for payment of administration expenses. It was actually accomplished by credits to him entered upon the corporation’s books. The stock so sold became treasury stock and has been held as such.
In addition, the decree under review has authorized a further sale of stock to the corporation for the year 1944 (the stock in that year was changed from no-par value to $100 par value), again for the purpose of paying the life beneficiary $10,000 and to take care of administration expenses, but at the price of $152.29, the book value as of December 31, 1944, arrived at upon the strength of an appraisal made in that year.
The life beneficiary testified at the hearing below that there was no market for the stock, and that it could not be sold. At any rate, since this was a close corporation, and the testatrix did contemplate the sale of stock for this purpose, it was implicit that she also authorized the selling to the corporation, despite the life beneficiary’s position as owner of stock himself. There is no question as to adequacy of price in the sales up to 1944, and it is not claimed that the valuation of the real estate, as appraised in 1944, and upon which the price of $152.29 was based, is less than full and fair value.
Thus, the reserve for depreciation has affected the extent of the invasion of corpus. A result of the stock sales to the corporation is that the percentage of the personal stockholdings of Hubbell in relation to the remaining outstanding stock has progressively increased, while the trust-owned holdings have been shorn and are threatened with ultimate total depletion.
Incidentally, the trustees have not sought to justify the absence of any declaration and payment of dividend« by the fact of a *138 deficit shown on the corporation’s books throughout the period in question.
It is our view that all authorities that have come to our attention which hold that a depreciation reserve should not be permitted to affect the amount to be made available for a life beneficiary were supported by construction of the terms of the particular trust involved to the effect that it was the intention of the testator or settlor that the life beneficiary, being the prime object of bounty, receive the full benefit of the gross income reduced only by actual expenditures for other than capital purposes, so that that beneficiary would be assured an adequate income. That consideration is not present here, for the testatrix clearly contemplated that a sum not less than $10,000 per year would be satisfactory, and that that would be made up out of principal if, for some legitimate reason, net income were reduced or even eradicated. Further, it may not be said that the testatrix did not know that, in the management of the affairs of the corporation, the interests of creditors, the corporation itself and other stockholders (despite the fact that Hubbell himself has continued to be the only other stockholder) must be protected. They would not be served if the depreciation of the value of the assets by wear, which must be accepted as an absolute reality, were not compensated by an appropriate reserve, In addition, for aught that appears, if the income were not reduced by the item of depreciation, the corporation’s income tax liability would be greater.
The application of a depreciation reserve did not do violence to the intent of the testatrix.
No contention has been advanced that the amounts variously reserved for the depreciation through the years in question were excessive.
With respect to so much of the objections to the account as relates to the trustees ’ commissions, and their removal, it is our view that, regardless of whether the various other objections should have been sustained or overruled, these were properly overruled. The record does not disclose negligence or unfaithfulness.
The decree should be affirmed, with costs to the respondents, payable out of the estate.
PresentNolan, P. J., Johnston, Adel, Wenzel and MacCbate, JJ.
Decree of the Surrogate’s Court, Westchester County, unanimously affirmed, with costs to respondents, payable out of the estate. [See post, p. 974.]