Joseph A. Cox, S.
Objections to the account of the administrators c. t. a. have been filed by the secondary life beneficiaries and the remaindermen of the residuary trust. At the opening of the hearing, objections 4, 5, 7, 8 and 10 were withdrawn. Of the remaining objections, proof has thus far been submitted only with respect to the sale of shares of stock of three closely held corporations. One of the administrators c. t. a., Irving Kahn, was a stockholder in these corporations. The shares of one corporation were sold to Mr. Kahn individually, the shares of another were sold to him and a third stockholder, and the shares of the last corporation were sold to a person with whom neither administrator appears to have any connection.
The objectants contend that the sale of estate property to one of the fiduciaries was a violation of the rule of undivided loyalty, that the sales must be set aside, and that the shares must be returned to the estate (City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125, 132). The administrator c. t. a. claims that the purchases were made pursuant to the terms of written agreements made with the decedent, and that the sales were not only proper and legal but that the shares could not have been sold to anyone else according to the provisions of the contracts.
The agreement executed by the decedent, Irving Kahn and other .stockholders of 48th Ave-Bayside Realty Co., Inc., explicitly prohibited the sale of any shares unless they are first offered to other stockholders, and it plainly provides that the surviving stockholders shall have the right to purchase the stock held by the estate of a deceased stockholder. The contract specifies how such option shall be exercised. No claim is made of any failure to live up to the contract obligations in this respect. The contract provides that the ‘ ‘ price to be paid for said stock shall be the book value of such shares of stock as of the date of death of such deceased party.”
The agreement between the decedent and Irving Kahn with respect to Woodside Gardens, Inc., does not explicitly cover the circumstances as they exist in this case. The agreement does provide that no stock may be transferred by either party without the written consent of the other, but that1 ‘ notwithstanding the terms of [that] paragraph ”, on the death of either party, his surviving spouse “ shall be entitled to be the holder of the shares of stock of the deceased, and may become the transferee of said stock.” The agreement further provides: “ Should *141 there not be any surviving spouse at the time of the death of either of the parties herein, then and in that event the surviving party shall have the option to purchase from the Estate of the Deceased, his shares of stock at a value which shall be fixed ’ ’ in a manner stated therein.
The decedent was survived by his wife. She was the primary life beneficiary of the residuary trust. The administrators c. t. a. interpret the agreement as if it gave the widow the first right to purchase the shares and gave the surviving stockholder a right to purchase shares not taken by the widow. The widow evidently read the contract in the same way, for she gave notice in writing to the fiduciaries that she would not purchase the corporate shares and that it was her wish that they dispose of the stock in accordance with the terms and conditions of the agreement with Mr. Kahn.
The court reads the agreement differently. It does not say that the widow of either party shall succeed to her husband’s stock interest, or that she shall have the right to purchase his shares. Neither party to the contract made any commitment to endow his wife with any rights to the stock. The contract did recognize that she “ may become the transferee ” and that she would “ be entitled to be the holder of the shares ”, but it presupposed a bequest to her, a gift causa mortis, or the inclusion of the stock as part of her intestate share. The contract permitted her to become a shareholder, but it did not obligate either party to make her one. This decedent did not give his wife any interest in the stock except the beneficial interest which flowed from the trust for her benefit. Undoubtedly the contract could be interpreted as authorizing the beneficial life use of the stock in such a manner. That question is not of any present consequence because there can be no doubt of the power of the fiduciaries to sell the shares of stock. Indeed in view of the nonproductive character of the investment and the widow’s wish for its disposition, a continued retention of the shares could well have subjected the fiduciaries to criticism and, perhaps, to a surcharge.
There can be no doubt that the terms and conditions of the contract bind the personal representatives of each of the contracting parties. Therefore, the shares of stock could not be transferred by the estate “ without the consent of the other, in writing ”, and the contract thus clearly contemplates that the other party may, if he wishes, prevent the transfer to another by purchasing the shares himself at a fair price. This would seem to be the only reasonable interpretation of the veto power over transfer of the other’s shares. The surviving stockholder, *142 who is also an administrator c. t. a., manifested his intention to prevent the stock from passing to another and to purchase it himself. It seems to the court that a fair reading of the contract assures him of the right so to do.
Under this interpretation of the contract, the question that immediately arises is whether the sales price of the shares is to be determined as outlined in the contract or in some other manner. As the court views the transaction, it makes no practical difference; the end result will be the same in either case.
The contract states that the “ value of said shares of stock shall be determined by appraisal; the surviving party to appoint one appraiser and the legal representative of the Estate of the Deceased party shall appoint a second appraiser and the two appraisers shall appoint a third, and tire decision of the said appraisers shall be absolutely binding on the party desiring to purchase said stock”. If the surviving stockholder were not one of the fiduciaries, he might be within his rights in demanding that the procedure outlined in the contract be followed strictly and that the decision of the appraisers, in the absence of bad faith, stand beyond challenge. However, the surviving stockholder accepted appointment as an administrator c. t. a. The will had named a corporate fiduciary as executor, but the nominated executor did not qualify. Presumably with the assent of the widow, the business associate and a friend of the decedent took office as his personal representatives. The contract certainly did not contemplate a situation where the surviving stockholder would be acting for himself and for the estate. Nor did the decedent place the surviving stockholder in such a dual position. The surviving stockholder has so placed himself that he may not act for the estate, for the corporation and for himself, without the supervision and direction of the court.
An executor or administrator has no authority in this State to pass upon the allowance of his own claim against the estate. The common-law rule was different (Neilley v. Neilley, 89 N. Y. 352, 355), but as far back as the Revised Statutes (Rev. Stat. of N. Y., part II, ch. VI, tit. Ill, § 33) the law of this State plainly provided that ‘ ‘ [n] o part of the property of the deceased shall be retained by an executor or administrator, in satisfaction of his own debt or claim, until it shall have been proved to, and allowed by, the surrogate ”. Section 212 of the Surrogate’s Court Act expresses the same prohibition in slightly different text. This ‘ ‘ wholesome and necessary provision ’ ’ has, therefore, long been a part of our law of estate administration. (Matter of Beare, 122 Misc. 519, 522, affd. 214 App. Div. 723.) It matters not that the fiduciary is jointly interested with others *143 in the prosecution of the claim or that he owns only a portion of it. (Shakespeare v. Markham, 72 N. Y. 400, 407.) The adversity of interest disqualifies him from acting as both plaintiff and judge. Nor does the fact that he has a coadministrator free of any personal interest in the claim, justify payment of the claim without court approval. In this' case the personal claims of the administrator c. t. a. have in fact been allowed and discharged by the fiduciaries. However, as Surrogate Wingate said in Matter of Gray (160 Misc. 710, 711), “no action on [their] part could produce this result ” in view of the terms of section 212.
On the other hand, their action in allowing the claims does not result in complete destruction of the contract rights of one of them. The court may not ratify the action or condone what was done. However, the fiduciary may proceed to do what he now concedes should have been done in the beginning. (Matter of Ducas, 109 N. Y. S. 2d 17, 24, affd. 279 App. Div. 730; Matter of Hepner, 123 Misc. 758, 760.) He must prove his personal claims, and establish the validity and justice of them in all respects. He must prove to the satisfaction of the court his right to purchase the shares pursuant to the terms of the contracts, and he must establish that the valuation of the shares of stock is in accordance with not only the letter of the contract, but with its spirit, as well. Much of the information which forms the basis for any appraiser’s valuation of the corporate shares comes from the books of the corporation and from the surviving stockholder. When the surviving stockholder thus occupies the dual position of claimant and estate representative, he must fairly and honestly furnish the appraisers with the data which lead them to a fair appraisal of the shares. He must convince the court that he has fairly and fully discharged his duties in this respect. Hence, even if the contract should be construed as applying to a sale of the estate’s shares to the surviving stockholder administrator, the personal claim of the administrator could not be determined by the appraisers appointed by him and his cofiduciary without submitting it to the scrutiny of this court.
If, on the other hand, the contract does not explicitly provide a method of valuing the stock in the circumstances which have come to pass, the fiduciary occupying the dual status of seller and purchaser must convince the court that the method of valuing the shares is equitable and just and that the valuation fixed is fair and reasonable. The result is, therefore, not substantially different in either case.
The court, therefore, holds that under the terms of the contracts, Irving Kahn had the right to purchase the decedent’s *144 shares of stock in Woodland Gardens, Inc. and 48th Ave-Bayside Realty Co., Inc. The court holds further that Irving Kahn is obliged to pay the fair and reasonable value of the shares, is bound to furnish the appraisers Avith full and frank information respecting the corporate assets and liabilities, and must establish to the satisfaction of the conrt that the purchase price of the shares is fair and just.
Under the circumstances of the case, appraisal of the assets by disinterested, competent persons Avould be desirable. There is no charge that the appraisers that Avere chosen in each instance Avere not men of integrity or that they lacked competence. There is no claim that they Avere selected for any ulterior purpose, or that they did not act fairly and honestly. The objectants do, hoAvever, disagree with certain valuations of real property made by the appraisers and with the weight given to many of the items by the certified public accountants. The court is of the opinion that the proof of valuation is not full and complete, and to expedite the proceeding, will indicate the respects in which proof must be further developed at the next hearing.
First, with respect to Woodland Gardens, Inc. The differences between the valuations made by the administrators’ appraisers and objectants’ appraisers relate to the following items:
(1) Valuation of developed land. The differences are not substantial, the estate’s valuation being almost 95% of the objectants’. There is no justification thus far in the record for saying that the appraisal made by the estate’s experts is not accurate and correct.
(2) Reserve for legal obligations. The stockholder’s agreement does not say that the purchase price shall be the value at the date of death. The text merely speaks of value, and it means value at the time of the appraisal. Paragraph Fifteenth clearly shows that the date of the testator’s death could not have been intended as the time for fixation of value. Therefore, it was error to deduct from the assets almost $80,000 representing the full amount of a claim against the corporation, mthout any effort to look at the realities of the situation at the time of the appraisal. The administrator c. t. a. must establish the reasonableness of this deduction.
(3) Bonus to Kahn. It appears from the record that the decedent had voted for the bonus, and that it was properly set up as a corporate obligation. In the absence of any proof to the contrary at any future hearing, the court will consider that item as established.
*145 (4) Reserve for capital expenditures. The court reads the report of the estate’s appraisers as meaning that the valuation of the buildings was made after taking into consideration the fact that future expenditures would have to be made to replace the items specified, and that such valuation reflected the necessity of such capital expenditures. It would be unusual for appraisers to fix a definite value for the buildings but to make that valuation subject to a deduction in an amount which they did not even attempt to estimate. If the court’s interpretation of the appraisers’ report be correct, it was error to deduct a large sum for future capital expenditures because those expenditures had been taken into account when valuation of the realty was fixed.
(5) Unrecorded sale of houses. The record does not contain sufficient evidence on this item. The argument of the administrator c. t. a. appears to concede that this item should have been reflected in the assets, and he seems to differ with objectants only as to value. There is thus far no real basis in the record to fix their value.
(6) Undeveloped land. There is no foundation in the present record for fair valuation of this land. There is a statement in the examination of the administrator c. t. a. that undeveloped land of this corporation was sold for $76,000, but it does not appear that it was the land now in question or when such land was sold. There is no justification in the present record for saying that either appraisal is correct. The difference between the two is substantial.
(7) Loan to decedent. An increase in the amount of the corporate obligations to the decedent would, of course, reduce the value of the shares. However, there is not sufficient evidence in the record to justify the reduction of the value of decedent’s loan to the corporation or to justify sale of the estate’s shares of stock without fair protection of the estate’s claim against the corporation. Objectants’ accountant states that the loan of the coadministrator was paid in part after the sale date as reported in the account, but that no comparable payments were made on the decedent’s loan. The charge is made that the decedent’s loan was reduced by mere bookkeeping deficits. Further evidence should be submitted on this item.
Second, with respect to 48th Ave-Bayside Realty Co., Inc. The administrator c. t. a. has thus far failed to establish that the purchase price of these shares was fair and reasonable. The record does not show just how the book value was determined. The appraisal by one of the estate’s appraisers would seem to *146 fix a higher valuation than the sales price. Moreover, the fiduciary fails to explain the reason for the sale of the Brown stock at a higher figure approximately one month earlier. Further evidence must be submitted on these matters.
Third, as to Spring'field Manor, Inc. Insofar as the present record shows, the administrators c. t. a. sold the shares owned by the decedent to a third person for $4,168, and neither of the administrators c. t. a. had any personal interest in the sale. The purchaser appears to have no connection with either administrator c. t. a. There is no question of self-dealing on the present record, and no violation of the rule of undivided loyalty. The appraisers retained by objectants fix a different value for land owned by this corporation than that fixed by the appraisers retained by the administrators c. t. a. The burden is on the objectants to establish that the sale was imprudent, or that the price was not fair and reasonable. On the present record they have not sustained this burden. Unless further evidence is submitted at the hearing, this objection must be dismissed.
Certain other objections remain open, upon which no proof at all has been submitted. All of the remaining issues in this contested accounting proceeding are placed upon my calendar for hearing on the 24th day of July, 1958 at 10:30 a.m.