Chief Judge Fuld.
This rather complicated estate litigation raises several' significant issues in the law of fraudulent conveyances. More particularly, it is argued that the establishment of inter vivas trusts and joint bank accounts during a person’s lifetime does not enable him to effect a testamentary disposition of his property, free from the claims of his creditors.
In 1953, Leslie Granwell and his first wife, Jeanette, entered into a separation agreement which provided that he would pay her $150 a month for the support and maintenance of their son, Alan, during the latter’s minority. Moreover, the husband promised in the agreement that, if he made any gift, set up any inter vivas trust or made any transfer during his lifetime which was not supported by- a full and adequate consideration, he would pay Alan “ one-half of the amount so transferred.” Finally, Leslie agreed that, upon his death, Alan would receive one half of the estate as well as the proceeds of certain life *94 insurance policies. Leslie and Jeanette were subsequently divorced and, in 1954, he married Monea Granwell.
During his lifetime, Leslie faithfully made the child support payments to his first wife and also provided an extra $14,000 for Alan’s college education. However, contrary to the terms of the separation agreement, he borrowed against, and changed, the beneficiary of some of his life insurance policies. In addition, he purchased mutual funds, having a value of some $38,000, part of which he took in his own and Monea’s names as joint tenants with rights of survivorship, and the remainder he used to establish revocable trusts with Monea designated as the remainderman. The parties have stipulated that the purchase of these mutual funds did not render Leslie “insolvent”. Upon his death in 1963, the child support payments ceased and Monea succeeded to ownership of the mutual funds. Leslie never paid Alan one half of the value of the funds, nor did he make suitable provision for Alan in his will as required by the separation agreement. Instead, he left his entire estate to Monea and named her as his executrix.
The accounting filed by the executrix showed that, after payment of funeral expenses and other debts, the estate contained about $20. Alan objected to the accounting and seeks to hold Monea liable to him (1) for $2,850 representing unpaid child support payments from the date of the decedent’s death until he came of age and (2) for one half of the mutual fund shares. The Surrogate held that Alan was a “ creditor of the estate ” for both of those Sums, that the transfer of the mutual fund shares to Monea was a “ fraud ” on his rights as a creditor and that Monea, as executrix, was personally liable. The court ordered, inter alla, that she pay the sums over to Alan 1 ‘ from her own funds”. On appeal, the Appellate Division modified the Surrogate’s order by striking the provisions for these payments on the ground that there was no showing of “ [a] dual intent to defraud ”.
This was erroneous. If Leslie Granwell had an interest in property which, at his demise, was gratuitously transferred to his second wife leaving his estate “insolvent,” the transfer would be ‘ ‘ fraudulent * * * without regard to his actual intent ” (Debtor and Creditor Law, § 273). Any creditor, having a claim against the estate, may “maintain an action” to *95 set aside such a fraudulent conveyance (Personal Property Law, § 19) and when, as in the case before us, the transferee happens to be the decedent’s executrix, the action may be brought in the Surrogate’s Court which has jurisdiction generally to hear and determine a ‘ ‘ claim to * * * personal property * * * in the possession ” of an executor (Surrogate’s Ct. Act, § 206-a; see Surrogate’s Ct. Act, §§ 40, 209).
In establishing inter vivas trusts for Monea with part of the mutual funds which he had purchased, Leslie reserved an absolute power to revoke the trusts or to change the beneficiary and, therefore, he remained the “ absolute owner of the estate conveyed, so far as the rights of creditors * * * are concerned ’ ’ ’ right up to the time of his death. (City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125, 133; see Real Property Law, § 139 [formerly § 145]; EPTL 10-7.2 [eff. Sept. 1, 1967].) The City Bank case (291 N. Y. 125, supra), like the case before us, involved securities which had been placed in a revocable trust. We declared that “ In such cases remaindermen have no vested interests until the retained powers of the settlor are terminated, usually by death ” (p. 133). It follows that Monea was not given any interest in these trusts until Leslie’s death and, to the extent that the trusts served to defeat Leslie’s obligations to Alan, they constituted fraudulent conveyances which should be set aside to satisfy Alan’s claims. (Debtor and Creditor Law, § 273; see, e.g., Reff v. Kanterman, 18 A D 2d 1104, affg. 35 Misc 2d 1029, 1032; Matter of Baker, 48 Misc 2d 732, 734; see, also, Scott, Trusts [2d ed., 1956], §§ 58.5, 156, n. 12; § 330.12.)
The situation is slightly different with respect to the mutual funds which were deposited in joint accounts. When a husband opens a joint account, it is presumed that he intends “a joint tenancy with his wife” and she thereby receives a gift of a “ moiety ’ ’ or one half of the value of the property on deposit. (Matter of Bricker [Krimer] v. Krimer, 13 N Y 2d 22, 27-28.) There is no evidence in the record to overcome that presumption here and, accordingly, Monea must be deemed to have received a gift from Leslie during his lifetime equal to a “ moiety ” of the mutual funds in the joint accounts. Since the parties have stipulated that this gift did not render Leslie insolvent, it cannot now be set aside. However, by virtue of *96 article 12 of the separation agreement, such a gift obligated Leslie to pay Alan “ one-half of the amount so transferred” and this would properly constitute a claim against the estate.
The other “moiety” of the joint accounts clearly remained Leslie’s property and was subject to attachment by his creditors during his lifetime. (See, e.g., Denton v. Grumbach, 2 A D 2d 420.) It would violate the spirit and purpose of both the Surrogate’s Court Act and the Uniform Fraudulent Conveyances Act (Debtor and Creditor Law, art. 10) to decide that the rights of his creditors were extinguished when Monea succeeded to his interest as the surviving joint tenant. A far better rule existed at common law and is to be found in Stileman v. Ashdown (2 Atk. 477, 26 Eng. Rep. 688, adhered to on rearg. 2 Atk. 608, 26 Eng. Rep. 763) decided by Lord Chancellor Hardwicks in 1742. In that case, a father purchased land and took it in joint tenancy with his son. Twenty years later, a creditor obtained a judgment against the father and, after the father died, the creditor was permitted to satisfy his judgment out of the father’s moiety of the premises.
Although it is true that a different result obtained in Matter of Glen (247 App. Div. 518, affd. 272 N. Y. 530), that case was overruled for all intents and purposes more than 20 years ago. In Glen, a husband promised, in a separation agreement, to leave his wife a major portion of his estate but for many years before his death he maintained a substantial balance in a joint bank account that he opened with his brother. The Appellate Division found in favor of the brother as surviving joint tenant and against the wife’s claim to the account on the ground that “An irrevocable title to the joint bank account vested in the [brother] at the time it was opened, and said account was not a part of the decedent’s estate at the time of his death ” (247 App. Div. 518, 522, supra). Although we affirmed that determination (272 N. Y. 530, rearg. den. 272 N. Y. 640; see, also, Hughes v. Fairfield Lbr. & Supply Co., 143 Conn. 427; DeForge v. Patrick, 162 Neb. 568), we did so without opinion, by a sharply divided court, and have never since cited the case. Subsequently, in City Bank Farmers Trust Co. v. Cannon (291 N. Y. 125, supra), we took a longer and more closely reasoned view of the applicable principles in a somewhat different context. As previously indicated, we held that? regardless of whether a *97 person designates those to succeed to his interest in property upon his death, if he reserves the power to dispose of the property during his lifetime, he must be regarded as its absolute owner until he dies. Since a joint tenant has unrestricted power to dispose of his moiety of a bank account, under the rationale of City Bank, it may not be said — as it was in Matter of Glen — that an “irrevocable title” to this portion of the property was “ vested ” in someone else at the time the account was opened. The Glen case, then, was implicitly overruled by our decision in City Bank.
Turning to the facts before us, we conclude that, during Leslie Granwell’s lifetime, Monea had only an expectancy that she would succeed to his moiety of the mutual funds held in the joint accounts. This expectancy was subject to being completely defeated by his withdrawal of the funds at any time and amounted, therefore, to no more of a property right vis-á-vis Leslie’s creditors than the ephemeral one she possessed as the remainderman of revocable trusts. (See City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125, 133, supra.) In each instance, although a transfer of interest was projected, it was not actually completed until Leslie died, at which time, if his estate was thereby rendered insolvent, the gratuitous conveyance became “ fraudulent as to creditors ” (Debtor and Creditor Law, § 273).
It would appear that Alan may have several claims under the separation agreement against his father’s estate for unpaid child support payments (see Forman v. Forman, 17 N Y 2d 274), as well as for a portion of the mutual funds. However, before that can be determined, the case must be remanded to the Appellate Division for determination of certain questions of fact which have not previously been considered (CPLR, 5613).
During Leslie’s lifetime, Alan received $14,000 more than his father was obligated to furnish in support payments and, after Leslie’s death, Alan received $8,000 of insurance proceeds in excess of those provided for in the separation agreement. The Surrogate found that the extra support payments were used for Alan’s college tuition and that this “ voluntary expenditure by the father ” was neither intended nor operated to “ deprive the infant of support after his father’s death. ’ ’ On appeal, the Appellate Division based its decision solely on the absence of any “ [a]ctual intent to defraud ” by Leslie when he created the *98 trusts and joint accounts. It never reached the issue of whether Leslie intended the $22,000 of extra support payments and excess insurance proceeds to be set off against the support payments due after his death or, perhaps, in satisfaction of his other obligations to his son under the separation agreement, Since these factual issues have been left unresolved, the case should be remanded to the Appellate Division so that it may pass upon them.
The order of the Appellate Division should he reversed, with costs, and the case remanded for further proceedings in accordance with this opinion.
Judges Van Voorhis, Burke, Scileppi, Bergan, Keating and Breitel concur.
Order of Appellate Division reversed, with costs, and the case remitted to that court for further proceedings in accordance with the opinion herein.