OPINION OF THE COURT
Walter J. Relihan, Jr., J.
A grandfather devised property to his granddaughter, reserving a life estate to the grandmother. He died in 1984.
*43 Thereafter, the grandmother and the granddaughter lived together on the property until June 18, 1990 when the grandmother became terminally ill and went to the hospital where she died, two years later, on December 12, 1991. However, six months before her death, she quitclaimed her remaining life interest to her granddaughter.
Some 12 months after the grandmother’s death, the plaintiff hospital brought an action to recover its bill from the granddaughter to the extent of the value of the grandmother’s life estate when it was conveyed.
A transfer which renders the transferor insolvent constitutes a fraud under section 273 of the Debtor and Creditor Law, regardless of intent. It is conceded that the grandmother became insolvent when her interest was given to her granddaughter without consideration.
The quitclaim deed met all of the tests laid down by section 273. A creditor’s claim, brought at any time during the continuance of the grandmother’s life estate, would have succeeded. The conveyance could have been set aside or annulled or the property made subject to a lien for the amount due the hospital (Debtor and Creditor Law § 278).
The question, in this case, is whether or not a creditor, the victim of a constructive fraud under section 273, may pursue and levy upon property which has passed from the debtor to a succeeding owner by operation of law.
Joint tenancies and revocable trusts present two circumstances in which the issue has arisen. The leading case is Matter of Granwell (20 NY2d 91). The Court sustained the right of a creditor to a lien for the value of the decedent’s "moiety” in a joint tenancy, as against the surviving tenant. Similarly, the creditor of the settlor was permitted to reach the beneficiaries’ interest in the revocable trust.
Chief Judge Fuld reasoned that something like a transfer had occurred at the death of the debtor (i.e., joint tenantsettlor) and, if that event rendered the estate of the debtor insolvent, a fraudulent conveyance had been established which permits a remedy against the property in the hands of the surviving tenant or trust beneficiary.
This result is based upon the rationale that, until the death of the debtor, the survivor or beneficiary acquired no indefeasible right in the property. The identity of the surviving joint tenant cannot be known in advance and the expectancy of any cotenant would be cancelled by his or her own prior demise. *44 Hence, the debtor retains a meaningful hold on the property. The release of that grip, at death, sufficiently approximates a conveyance from the debtor to satisfy the spirit of the Debtor and Creditor Law. The settlor of a revocable trust occupies a similar status vis-á-vis the beneficiary.
The rationale breaks down in the case of a tenancy by the entireties. Unlike the joint tenancy, both members of the tenancy by the entireties are deemed co-owners of every atom of the property during their joint lives. The removal of the spouse, by death, leaves the survivor with the same ownership interest in the same atoms (Kozyra v Goldstein, 146 Misc 2d 25; Matter of Dickie, 55 Misc 2d 976). Hence, no transfer, actual or conceptual, occurs at death.
The relationship between a life estate and a remainderman is wholly dissimilar. The grandmother’s interest was finite. With each passing day, its value inexorably dwindled and reached a vanishing point at death. While the same erosion affects the value of a joint tenancy, there is a distinction. A life tenant is never in a position to oust the remainder interest, as one joint tenant might another. Hence, the life tenant has no hold upon the property in the sense envisioned by the Court in Matter of Granwell (supra).
The plaintiff’s action to recover the hospital bill was not begun until well after the grandmother’s death, when it became apparent that her estate was insolvent. At the moment of the grandmother’s death, the life estate disappeared, leaving nothing in view but the granddaughter’s preexistent but now unburdened remainder. No part of that estate was conveyed to her by the grandmother.
The hospital’s legitimate claim against the grandmother’s insolvent estate must go unpaid. It is some solace to note that no reasonable business expectation has been frustrated. That is, no lender would have extended any greater credit to an 87-year-old woman, stricken with emphysema, than would have been justified by the market value of her dwindling right of possession. In sum, no detrimental change of position by the hospital, in reliance upon the right to pursue the life estate, has been shown.