OPINION OF THE COURT
Louis B. York, J.
In this action, plaintiff seller asks the court to find defendant buyer in default of an agreement for the sale of real property, and to direct that the escrow deposit that defendant pledged as liquidated damages in case of default on the agreement be released to plaintiff. Currently, the plaintiff moves for summary judgment. For the reasons discussed below, the court denies plaintiffs motion for summary judgment and grants summary judgment for defendant.
Plaintiff Robert Kurzman is a trustee of the Berrett Revocable Trust dated July 26, 1991 (Berrett Trust). He entered into an agreement with defendant Fiona Graham, by which Graham would have purchased trust property, the residence of Arnold Berrett. Arnold Berrett is a settlor and a beneficiary of the trust. He is also a longtime friend of Graham. Kurzman and Graham entered into the agreement on April 19, 2005, at which time Graham put down a $270,000 deposit on the purchase price of $2.8 million. The agreement set April 29, 2005 as the closing date.
Two provisions of the agreement are relevant to the action before the court. The first is that it contained an explicit prohibition against oral modifications. Paragraph 28 (b) of the agreement states, in pertinent part, “Neither this contract nor any provision thereof may be waived, changed, or cancelled except in writing.” The defendant has testified that she read and understood this paragraph when she signed the agreement.
The second relevant provision of the agreement is that it did not contain a mortgage contingency clause. A mortgage contingency clause would have conditioned Graham’s obligation to purchase under the agreement upon issuance of a written commitment from an institutional lender to make a first mortgage loan to Graham. Absent the clause, claims Kurzman, Graham’s failure to purchase the house as agreed is breach of *588 contract entitling Kurzman to liquidated damages, pursuant to paragraph 23 of the agreement. Paragraph 23 provides that if the purchaser defaults, the seller’s remedy will be to retain the down payment as liquidated damages. Although Graham did not have legal representation at the time that she signed the agreement, she was a sophisticated buyer who had previously purchased at least five properties for investment. Graham testified that she was aware when she signed the agreement that it did not contain a mortgage contingency clause and understood the significance of the clause’s absence. She stated that the lack of a mortgage contingency clause was of no concern to her because she had been preapproved for a mortgage.
Berrett was not able to move out of the house by April 29, so the closing was put off several times. Graham, whose mortgage preapproval bore a time limit, feared that her preapproval would lapse if the delays went on for too long. She therefore sought Berrett’s assurance that she would be released from the purchase agreement if the preapproval expired and she was unable to obtain a new mortgage approval on acceptable terms. Berrett assured Graham that, as the settlor of a revocable trust he could direct the trustee, plaintiff here, not to enforce the liquidated damages provision of the agreement. Because Graham and Berrett were longtime friends, she accepted this assurance and agreed to the closing date extensions.
The parties extended the closing date three times, first to June 30, 2005, and then to July 29, 2005, and finally to August 16, 2005. When Berrett had not vacated by this last date, Graham and Berrett decided to call off the closing, cancel the sales agreement, and return Graham’s down payment. The conversation between Graham and Berrett took place on August 18, 2005, after which Graham considered the matter closed except for the return of her deposit. However, on September 2, 2005 Kurzman sent a letter to Graham’s counsel demanding that the closing occur on September 23. On that same date, September 2, Berrett informed Graham that the trust was no longer revocable, and that he could therefore not direct the trustee to return Graham’s deposit as he had promised he would. Graham’s failure to close on September 23 gave rise to the instant action.
Kurzman rests his motion for summary judgment on a straightforward statement of the facts: Graham signed an agreement that did not contain a mortgage contingency clause; Graham defaulted on the agreement, purportedly because her *589 mortgage commitment expired prior to the closing; a liquidated damages clause in the agreement provides that in the event of default, Kurzman would be entitled to retain the down payment.
In moving for summary judgment, the plaintiff invites the court to accept as true the defendant’s version of the facts, and to rule that notwithstanding these facts, the plaintiff should prevail as a matter of law. (CPLR 3212 [b]; Citibank, N.A. v Dutka, 74 AD2d 520, 520 [1st Dept 1980].) Here, however, the court finds that plaintiff is not entitled to judgment as a matter of law. To the contrary, the court finds that the undisputed facts and the law of this state entitle the defendant to summary judgment.
The determinative question in this suit is whether a written agreement for sale of real property can be modified by oral agreement. General Obligations Law § 15-301 (1) provides that “[a] written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought . . . .” However, the Court of Appeals has held that, notwithstanding the existence of such a provision, “[o]nce a party to a written agreement has induced another’s significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification.” (Rose v Spa Realty Assoc., 42 NY2d 338, 344 [1977].)
In order to eliminate the possibility that a purported oral modification might be false, the Court of Appeals has articulated a further requirement for a party who wishes to establish estoppel: the conduct on which the party relied “must not otherwise be compatible with the agreement as written.” (Id.) However, proof of oral modification, by itself, is not enough to establish estoppel: the party seeking estoppel must also prove that she acted in a manner that she would not have acted but for the oral modification. (The Savage Is Loose Co. v United Artists Theatre Circuit, Inc., 413 F Supp 555, 559 [1976].)
Thus, although section 15-301 disfavors oral modifications to written agreements, and proscribes enforcement of oral modifications to written contracts that contain a no oral modifications provision, courts have recognized an exception to this general rule where a defendant has relied on an oral *590 modification to her detriment, where the conduct relied upon to establish estoppel is not otherwise compatible with the agreement as written, and where the party arguing for estoppel acted in a manner that she would not have acted but for the oral modification.
A secondary but nonetheless crucial question arises as to whether Graham was justified in relying on Berrett’s promise that the liquidated damages clause would not be enforced. Berrett was not a party to the contract, but he was a settlor of the Berrett Trust — which owned the property to be sold — when he promised Graham that he would instruct the plaintiff not to enforce the liquidated damages clause. According to Estates, Powers and Trusts Law § 10-10.6, “Where a creator reserves an unqualified power of revocation, he remains the absolute owner of the property disposed of so far as the rights of his creditors or purchasers are concerned.” This law has been interpreted to protect the rights of parties who deal in good faith with the settlor.
The most common application of section 10-10.6 (or its statutory predecessors) occurs where a settlor’s creditors seek property that the settlor has bequeathed to a trust. Under those circumstances, courts will not allow the owner of assets to evade creditors by placing the property in a trust while retaining a right to revoke the trust. (See, e.g., Matter of Granwell, 20 NY2d 91, 95 [1967]; see also Matter of Martin, 259 AD2d 809, 810-811 [3d Dept 1999].)
Alternatively, a trustee was permitted to invoke section 10-10.6 to show that a settlor who has retained the power of revocation had ratified a transaction undertaken by the trustee that would otherwise have violated the trustee’s duty of undivided loyalty to the trust. In City Bank Farmers Trust Co. v Cannon, a series of transactions resulted in a trust acquiring, as an asset of the trust, a beneficial interest in its own stock. (291 NY 125, 130-132 [1943].) As a result, the trust’s loyalties were divided between the interests of its beneficiaries and the interests of the trust company itself. (Id.) Without more, the Court would have held the trust liable for a loss on the shares. However, because the settlor had reserved the right to exercise the powers of ownership, and because she had approved the transactions that gave rise to the trust’s divided loyalty, the beneficiaries could not recover from the trustees for losses on the approved transactions. (Id. at 133-134.)
Applying the law regarding oral modifications to the facts of this action, three questions present themselves. First, did the *591 defendant act in significant and substantial reliance on Berrett’s assurance that she would be released from the agreement if her mortgage preapproval expired and she could not obtain a new loan agreement on favorable terms. The undisputed evidence before the court shows that the defendant did so rely. When the initial closing date came and went, the defendant would have been within her rights to withdraw from the contract and receive her deposit back. As subsequent closing dates passed, the defendant began to fear that her preapproval would expire, thus leaving her liable to purchase the property on potentially unfavorable terms or risk forfeiting her deposit. Instead of withdrawing from the agreement as she was entitled to do, defendant, relying on Berrett’s statements that he would direct the trustee not to enforce the liquidated damages clause, granted multiple extensions to the closing date.
The second question that must be answered when a defendant seeks to estop a plaintiff from invoking the no oral modifications clause of a contract concerns whether the plaintiffs conduct was otherwise incompatible with the agreement as written. Here, the agreement as written set a closing date of April 29, 2005; that date appears to have been subsequently modified to June 30, 2005 by someone scratching out April 29 and writing June 30 above. But the closing did not occur on either April 29 or June 30. Instead, negotiations continued concerning such matters as Berrett’s move-out date and whether Berrett would be able to store some of his property in the residence after the closing date. That plaintiff did not vacate the residence or present it as available for closing until September 2, 2005 is not otherwise compatible with the agreement as written.
Finally, it is clear from the defendant’s testimony that she would not have agreed to put off the closing date, thus risking the expiration of her mortgage preapproval and exposing her to liability under the terms of the agreement, but for Berrett’s assurances that he would direct the trustee not to enforce the liquidated damages clause of the agreement. This satisfies the requirement, articulated in The Savage Is Loose Co., that the defendant act in a manner that she would not have acted but for the oral modification.
Turning next to the application of Estates, Powers and Trusts Law § 10-10.6 to the facts before the court, no cases with closely similar facts are available as a guide. As the settlor of a revocable trust, Berrett retained the power to revoke the trust or *592 direct its actions. Section 10-10.6 protects the rights of a purchaser of trust property under just those circumstances. Among the rights so protected is the right to assert equitable estoppel against the enforcement of a no oral modifications clause in a contract. Therefore, the defendant was entitled to rely on Berrett’s promises that the plaintiff would not enforce the liquidated damages provision of the agreement. Because the defendant significantly and substantially relied on Berrett’s assurances, the plaintiff is estopped from enforcing the liquidated damages provision now, and the defendant is entitled to the return of her deposit.
Accordingly, it is ordered and adjudged that plaintiffs motion for summary judgment is denied, and the motion of defendant for summary judgment is granted; and it is further ordered and adjudged that defendant Fiona Graham is awarded the sum of $270,000 with interest from August 18, 2005.