Joseph A. Cox, S.
On July 6,1953 the testator executed a deed of trust to Girard Trust Corn Exchange Bank, a Pennsylvania corporation, as trustee, and he also executed his will which named this bank and his wife as executors. The will provided that the residue of the testator’s estate be paid to the trustee under the deed of trust. The testator died in August, 1957 and his will was admitted to probate and letters testamentary were issued to his widow.
On March 4,1954 the testator and Girard Trust Corn Exchange Bank entered into a suretyship agreement under the terms of which, in consideration of credit accommodation not to exceed $10,000 granted or to be granted by the bank to a named individ *363 ual and a named corporation, as principals, the testator became surety to the bank for the payment at maturity of liabilities contracted by the principals whether then existing or later incurred. Under the agreement the testator, as surety, waived any of the bank’s rights or remedies and the agreement provided that if any liability of the principals to the bank should not be paid when due it would be the privilege of the bank to recover from the surety. It would seem that under the language of this contract and the applicable law the surety waived any require ment that suit be instituted against the principals before resort to the surety (Commonwealth v. National Sur. Co., 310 Pa. 108).
Subsequent to the date of the suretyship agreement the bank granted a number of loans to the corporation named in the agreement. These loans were on a time basis until September, 1957 when loans were made on a demand basis. On September 4, 1957, subsequent to the testator’s death, the corporation executed its demand note to the order of the bank in the amount of $10,000. Demand was made upon the corporation for payment of this note and when payment was not forthcoming, claim upon the note was made against this estate. The bank has not instituted any action against the principal debtor and has stated that it has so refrained lest legal action precipitate the bankruptcy of its customer.
At the time this loan was made by the bank, approximately a month after the testator’s death, it was trustee under the deed of trust, nominated executor under the decedent’s will and, as trustee, residuary legatee of that will. In its fiduciary capacity as a trustee it was the duty of the bank to preserve and protect the residuary estate and, insofar as legally permissible, to oppose every claim that would effect a diminution of the estate. The bank owed no obligation to the principal borrower inasmuch as the relationship between the bank and the borrower was solely that of creditor and debtor. The borrower was a customer of the bank and, because the business of a bank is to lend money, the bank as a matter of business policy might be disinclined to discourage future business but, if any such motivation existed, it certainly was not a factor that contained any element of fiduciary relationship. Confronted with a situation where collection of its debt could be sought against either the borrower or the estate, the bank chose to accept the borrower’s statement of inability to pay and to institute a proceeding to compel payment by the estate.
The duty of loyalty which a trustee owes to the beneficiaries of a trust and which compels the trustee to administer the trust *364 solely for the benefit of the beneficiaries has been stated in court decisions over the years and to some extent has been a matter of statutory enactment. Chief Judge Cardozo’s often quoted passage from Meinhard v. Salmon (249 N. Y. 458, 464) defining the applicable standards is too well known to require quotation again. That decision, as well as many others, fixes the most rigorous standards of conduct whenever a trustee acts in his own interest. The test is not whether a trustee has actually obtained a personal benefit but, instead, the standard is that a trustee is not permitted to create or to occupy a position in which he may serve any interest other than that of the trust estate (City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125, 131-132). Here the position of the executor is that the estate is prepared to pay any balance of the note that may remain uncollected after full recourse against the borrower but application of the accepted standards to the position occupied by the bank at the time the loan was made leads to the conclusion that the surety-ship agreement is not enforcible at all. In the Cannon case (supra) the court said (p. 132): “ when the trustee has a selfish interest which may be served, the law does not stop to inquire whether the trustee’s action or failure to act has been unfairly influenced. It stops the inquiry when the relation is disclosed and sets aside the transaction or refuses to enforce it, and in a proper case, surcharges the trustee as for an unauthorized investment. It is only by rigid adherence to these principles that all temptation can be removed from one acting as a fiduciary to serve his own interest when in conflict with the obligations of his trust. (Dutton v. Willner, 52 N. Y. 312, 318; Munson v. Syracuse G. & C. R. R. Co., 103 N. Y. 58, 74; Meinhard v. Salmon, supra; Wendt v. Fischer, 243 N. Y. 439, 444.) The rule is designed to obliterate all divided loyalties which may creep into a fiduciary relationship and utterly to destroy their effect by making voidable any transactions in which they appear. ’ ’
At the time the agreement was made and for a period thereafter during which loans were made the testator was living and it was his prerogative to enter into the suretyship agreement knowing that the bank also was his trustee but, upon the testator ’s death, the bank assumed the position theretofore occupied by the testator and, for all practical purposes, the bank as lender and the bank as trustee of both the assets held in the inter vivos trust and the assets constituting the residuary estate was in a position of contracting with itself. At that point the bank was lender and surety of its own loan. Whatever its position with respect to prior existing loans, the bank was not in a position to advance further funds to its customer in reliance upon the *365 estate assets. In doing so the bank, as trustee, was using estate assets for its own benefit and by such act it could not impose a liability upon the estate.
At the time the loan of September 4, 1957 was made by the bank the corporation was indebted to the bank in a like amount and, while the testator’s death operated as a revocation of the suretyship agreement (Matter of Lorch, 284 Pa. 500) the estate would have been liable for the existing debt in the absence of facts constituting a discharge. It cannot now be said that the corporation in September, 1957 was capable or incapable of meeting its obligations. Who is now to say that had demand been made upon the estate at the time the prior obligations became due the estate could not have recouped from the corporation? That question has been removed from this case by the act of the bank in renewing the loan at a time when it was not in a position to rely upon the suretyship agreement. Certainly the bank was not privileged, after the termination of the suretyship agreement, to postpone payment of the debt by a renewal note and thereby possibly prejudice the rights of the estate. The claim of the bank is dismissed. The motions to strike petitioner’s Exhibits 3, 5, 7 and 8 are granted.
Submit decree on notice.