Joseph A. Cox, S.
The testator bequeathed certain personalty to his widow and the residue of his estate to a trust company as trustee under a deed of trust which the testator had executed immediately prior to the execution of his will. Letters testamentary have issued to the widow and she has petitioned for the settlement of an intermediate account of her proceeding’s as executrix. Objections to such account have been interposed by the trust company, as residuary legatee, and hearings upon such objections have been conducted.
A judicial construction of the testator’s will has not been obtained and none now is requested. It is recognized in this proceeding that the trust company is entitled to receive the *675 residuary estate and that payment will he made to the trust company as trustee of the inter vivos trust. The direction in this will seems to be quite analagous to the testamentary provision considered in Matter of Ivie (4 N Y 2d 178) wherein the will provision was upheld and particular reliance was had upon Matter of Rausch (258 N. Y. 327). In the Rausch opinion the court said (p. 331): “ What is taken as trustee is taken subject to the trust, for it can be held no other way. A gift to a trust company as trustee of a trust created by a particular deed identifies the trust in describing the trustee, like a gift to a corporation for the uses stated in its charter. * * * The legacy when given was not the declaration of a trust, but the enlargement of the subject-matter of a trust declared already”.
On the date of the testator’s death, August 10, 1957, he was the owner of real property which has been referred to in this proceeding as the Montauk Chalet. There was a mortgage lien on such property in the amount of $190,000 upon which the testator had prepaid interest to October, 1960. In 1958 there was pending in the Supreme Court, New York County, an action which had been instituted by the executrix against an individual and a corporation for an accounting of the management of this real property. The individual defendant in that action was the person who held the $190,000 mortgage and, in December, 1958, an agreement was reached between the executrix and the individual defendant for the settlement of the action. One of the terms of this settlement provided that the $190,000 mortgag-e would be assigned to the testator’s widow at the discounted amount of $140,000. In March, 1959 the widow submitted to the Supreme Court an affidavit in which reference to the settlement was made and it was represented that the estate lacked funds to meet a principal payment of $50,000 which would become due on this mortgage on October 1, 1960, that the widow, using her personal funds, was talcing the assignment of mortgage in her individual capacity at the request of the children of the testator and with the full consent of .such children and that the benefits to the estate would be (1) relief from the obligation to pay $50,000 in reduction of mortgage principal (2) the preservation of the property from a foreclosure which could result from a default in making the $50,000 payment (3) a voluntary reduction by the widow of the principal amount of the mortgage from $190,000 to $165,000 (4) an extension of the mortgage for five years beyond its original due date (5) an arrangement for quarterly payments of $2,250 on account of interest and principal and (6) the placing of the estate in a liquid position to meet funeral expenses, cost of administration and creditors’ claims. *676 The affidavit did not represent that the plaintiff executrix had obtained any approval by the Surrogate of this proposal to rewrite the terms of the mortgage and to make it her personal asset, and in fact, such approval had not been obtained. The affidavit did list the names and addresses of the heirs and next of kin of the testator. Such persons, the children of the testator, are not mentioned in the testator’s will, although they may ultimately acquire benefits under the inter vivos trust which is mentioned in the will. The affidavit further stated that the trust company which is the residuary legatee under the will, although not described as such in the affidavit, renounced its right to appointment as executor and had not ‘ ‘ qualified under the Banking Law of New York as a Trustee ” but had asserted a claim against the estate for $10,000. A casual reading of this reference to the trust company could convey an implication that its only position in the estate was that of a creditor. On March 24, 1959 the Supreme Court made a short order which recited a stipulation of discontinuance and the affidavit of the widow and approved the settlement.
The settlement, insofar as the mortgage assignment was involved, was made by delivery to the mortgagee of an estate check in the amount of $40,000 (dated December 26, 1958 long prior to the request for court approval of the settlement), the delivery of another estate check in the amount of $25,000, the payment from estate funds of a further amount of $2,555.59 and the payment of $72,444.41 by the widow. Of the total payment of $140,000 required to place the mortgage in the name of the widow, the contribution by the estate was $67,555.59. Of the payment made by the widow, the sum of $20,000 was advanced by the attorney who represents the executrix in this proceeding.
The account of the executrix states that she is willing to grant the estate a voluntary reduction of the mortgage principal from $190,000 to $165,000. The residuary legatee contends that the estate’s liability on the mortgage is only $140,000, the amount for which it was assigned by the original mortgagee. The executrix meets this objection with the assertions that the order of the Supreme Court constituted a full approval of her purchase of the mortgage, that such approval is binding oh the residuary legatee, which was not a party to the Supreme Court action, and that the Supreme Court order is binding upon this court in this proceeding for the judicial settlement of the account of the executrix.
The order of the Supreme Court does not shield the executrix from an inquiry into her administration of this estate and this *677 mortgage. Assuming that an order obtained in the Supreme Court'would afford the protection which the executrix claims, the fact is that the order approved an arrangement under which, in conformity with the representation to the court, the mortgage assignment was to be procured by the use of the personal funds of the widow but the fact was that the assignment was accomplished by use of a substantial amount of estate assets and, for such reason alone, the settlement actually effectuated was not the settlement approved by the Supreme Court. It seems beyond argument that, having obtained court approval upon a representation that funds of the estate were not to be involved, the executrix, under the shield of court approval, was not privileged to alter the terms of the settlement and, lacking the financial ability to complete the deal, avail herself of estate funds for her personal benefit. The transaction as it ultimately evolved was not at all the transaction which had been approved by the Supreme Court and such completely different transaction cannot be said to have court approval.
The executrix could have obtained protection by an application pursuant to section 213 of the Surrogate’s Court Act and approval procured under that statute would be subject to attack only upon the ground that the debt had been fraudulently compromised. A comparable provision is not contained in the Civil Practice Act and the action in the Supreme Court had no relation to the mortgage debt. It is the opinion of this court that an agreement of the type submitted to the Supreme Court would be binding only upon the parties to the action pending in that court and would not be binding upon persons who were not parties to that action. The objectant urges that the presentation of the settlement to the Supreme Court involved fraudulent representations in that the court was advised that the consideration was to be provided by the individual assignee, when in fact estate funds already had been used for that purpose and the assignee was financially unable to provide the consideration; in that the purported advantages to the estate were not in fact benefits to the estate; in that the matter was presented to the court on a basis intended to convey the impression that the children of the testator were the beneficiaries of the estate, when in fact they were not, and in that the matter was presented in a manner to convey the impression that the trust company, by renunciation or inactivity, had no interest in the estate, when in fact it is the residuary legatee. These charges are not without significance in a determination of the ultimate responsibility of the executrix but, in view of the holding that the *678 Supreme Court order of discontinuance does not provide the executrix the protection which .she claims, there is no heed to characterize these representations.
In June, 1959 the executrix made application to Surrogate Di Falco for approval of a sale of the Montauk Chalet property and for approval of the agreement to purchase the mortgage with her personal funds. The petition on such application stated that the trust company was not a necessary or proper party. An order was made on June 24, 1959 granting the application. Thereafter application was made by the trust company to vacate the order of June 24, 1959 and Surrogate Di Falco then made a further order directing that all questions as to the propriety of the sale of the property and the assignment of the mortgage be left open and be disposed of in this accounting proceeding, which then was pending. That order, from which no appeal has been taken, requires that the issue as to the validity of the assignment be disposed of at this time.
The law applicable to this issue appears in an earlier decision in this same proceeding (23 Misc 2d 362) and in making that decision the court referred to the leading cases defining the standards governing fiduciary conduct. At that time the court quoted from City Bank Farmers Trust Co. v. Cannon (291 N. Y. 125) the well-established rule that a fiduciary may not occupy a position in which he may serve any interest other than that of the trust and, when the fiduciary has a selfish end to serve, the motive of the fiduciary is without significance and the transaction is voidable. (See, also, Meinhard v. Salmon, 249 N. Y. 458; Dutton v. Willner, 52 N. Y. 312; Munson v. Syracuse Geneva & Corning R. R. Co., 103 N. Y. 58; Wendt v. Fischer, 243 N. Y. 439.) The facts related above establish beyond question that the executrix in procuring an assignment of the mortgage and in altering the terms of the mortgage, all without notice to the residuary legatee, was in a position of divided loyalty. This position in which the executrix placed herself was sufficient to render the entire transaction voidable, irrespective of any personal benefit to her, but here the executrix is contending that she is entitled to a personal profit payable to her from estate assets. This contention is untenable. Objection I is sustained and it is held that the discount obtained on the mortgage shall inure to the benefit of the estate, that the mortgage in its reduced amount is to be assigned to the estate and that the executrix is entitled to payment of $72,441.41, the amount paid by her to the mortgagee, without interest.
*679 Objection II, concerning the proposed sale of the Montauk Chalet property, was resolved by a stipulation placed upon the record of the trial and this objection is marked withdrawn.
The real property described as the Esplanade property concededly is an estate asset and the executrix is held to be accountable for the rents collected by her in the amount of $2,000. All questions as to depreciation in value and any responsibility therefor are reserved for the final accounting of the executrix at which time the actual evaluation of the property will be of consequence. Until the completion of the executorial administration of the estate, or an earlier sale of the property, no party is affected by an evaluation placed upon the property in the records of the estate. Objections III and IV are disposed of by these rulings.
Objection V is sustained to the extent of $200 for which sum the executrix is held accountable with interest from September 25, 1957.
Upon the issue presented by Objection VI it is held that the executrix is entitled to the sum of $20,500, the amount paid by her for the Esplanade mortgage and $200 as claimed by her in Schedule D-2 of her account, with interest on such amounts at 4% per annum from April 15, 1959.
Objection VII is sustained and the claim of the widow to a dower interest in the New Jersey property is disallowed (Caravatta v. O’Brien, 98 N. J. Eq. 199; Farner v. Farner, 100 N. J. Eq. 161; New Jersey Stat., tit. 3A, chs. 35, 37).
The executrix has acknowledged that the sum of $500 referred to in Objection VIII is an estate asset but, since this sum was recovered subsequent to the period included in this accounting, it is to be reported in the final accounting. The objection is dismissed.
It is conceded that the double credit referred to in Objection IX was an accountant’s error and will be corrected. The portion of this objection pertaining to the attorney’s fee is dismissed.
The proof of the objectant was inadequate to support its Objection X and that objection is dismissed. The validity of Objection XI has been conceded by the executrix. Objection XII is sustained inasmuch as the legal services there referred to were rendered solely for the personal benefit of the executrix and not to the estate. Objections XIII, XIV, XV and XVII are marked withdrawn. The executrix has conceded that she is accountable for the sum of $500 referred to in Objection XVT. Objection XVIII does not require ruling at this time and the matter of an attorney’s fee is reserved for the final accounting.
*680 (Supplemental Decision.)
This decision supplements the prior decision rendered in this accounting proceeding.
In respect of Objection VI to the account, the prior decision contained a typographical error in that the amount claimed by the executrix in Schedule D-2 of her account, and intended to be allowed by the court, was $2,000 and not $200 as stated in the court’s decision.
The executrix will be allowed reimbursement of the sum of $15,115, advanced by her in the Figdor transaction, with interest at 4% from June 12,1958 to the date of a decree. Any remaining question as to allowance of interest will be reserved for the settlement of the decree.